CHICAGO, PEORIA AND ST. LOUIS RAILWAY CO. OF ILLINOIS

*v.*

CHARLES REUTER *et al.*

*Opinion filed October 23, 1906—Rehearing denied Dec. 5, 1906.*

1. WATERS—*in Illinois there is no distinction between surface
waters and overflow waters.* In Illinois there is no distinction, as
to small streams, between surface waters and overflow waters in
times of flood, and the owners of land along such streams are
bound to so use them as not to injure the lands of others, both as
regards surface and overflow waters.

2. SAME—*each overflow caused by improperly built railroad em-
bankment is a fresh nuisance.* Each overflow of the lands of an
adjoining owner caused by the negligent or improper construction
of a railroad embankment is a fresh nuisance and creates a new
cause of action, and the railroad company is liable, after notice to
remedy the defective construction, even though the embankment
was constructed by another railroad company.

3. SAME—*parties restraining flow of water must guard against
heavy rainfalls.* Parties changing or restraining the flow of water
must provide against the consequences of unusually heavy rain-

falls, and are liable for damage to the lands of others caused by failure to make such provision.

4. Same—*whether rainfall is unprecedented is a question of fact.* Whether the rainfall which caused the overflow to plaintiff's lands was so heavy and unprecedented that the damage might be rightly regarded as caused by "an act of God," so as to relieve the defendant from liability, is a question of fact to be determined by the jury from the evidence, under proper instructions.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. W. J. N. Moyers, Judge, presiding.

This was an action on the case for damages caused by the backing up of water and flooding of appellees' lands, and the consequent destruction of their crops.

The declaration avers, in substance, that in the spring of 1902 appellees were in possession of a large body of fertile farming lands in Madison county, Illinois; that said railway company was at that time, and prior thereto, possessed of a certain right of way over said lands, which crossed certain natural depressions through which the surface water passed which naturally fell upon appellees' lands or naturally flowed upon them from other lands in times of freshet and high water; that upon said right of way over said depressions there had been constructed an embankment, but so carelessly, negligently and improperly as not to leave a sufficient opening to allow the water naturally cast or flowing upon appellees' lands to pass through said depressions as it was naturally accustomed to do; that in the spring and summer of 1902, and prior thereto, the appellant, being so possessed of said right of way, had wrongfully maintained and continued the embankment in the same improper condition in which it had been constructed, after being requested and notified to remove the same; that in the summer of 1902 heavy rains set in and caused a freshet and high water, which naturally ran upon appellees' lands and would natu-

rally have escaped therefrom and run off through the said natural depressions without damage but for said embankment, and was thereby forced back upon and flooded appellees' lands, and damaged and destroyed large quantities of wheat, oats, potatoes and other crops belonging to appellees, then located upon said lands, to the damage of $5000. Defendant pleaded the general issue. The case was then tried before a jury, and a verdict for $1625.41 was returned against the defendant and judgment entered thereon. Upon appeal of the case to the Appellate Court the judgment was affirmed.

Terry & Gueltig, (Wilson, Warren & Child, of counsel,) for appellant.

Warnock, Williamson & Burroughs, for appellees.

Mr. Justice Carter delivered the opinion of the court:

We do not deem it necessary to review at any length the evidence in this case. On all of the controverted facts the judgment of the Appellate Court is final.

It is urgently insisted by appellant that there is a variance between the proof and the declaration, the latter charging the damages to have been caused by surface water, while the former showed it was caused by overflow water. Appellant contends that in considering a question of this nature water should be divided into three classes: channel waters, surface waters and overflow waters. There are many diverse opinions as to whether overflow water should be considered as surface water or channel water. Some authorities have held that there should be a distinction made as contended for by appellant, but this distinction has always been made when there was at the same time a distinction recognized between the rules governing surface water and water flowing in natural water-courses as to the rights between dominant and servient heritages. The authorities have all agreed that riparian proprietors along

regular water-courses must so use their lands as not to injure their neighbors. (30 Am. & Eng. Ency. of Law,—2d ed.—688.) But many authorities in this and other countries have held that surface water was a common enemy, which might be fought by everyone. (Farnham on Waters and Water Rights, sec. 879.) And where a different rule has been applied to surface waters than has been applied to running streams, overflow waters have sometimes been held to partake of the nature of surface and sometimes of running waters. The weight of authority, where a distinction is made between the rules of law governing surface. waters and running streams, tends strongly to hold that if waters partake of the nature of running streams rather than of surface waters, then one must so use his own property as not to injure his neighbor, but if they partake of the nature of surface water, then the rule as to surface water will apply. But where the courts attempt to make a distinction between the rules applying to surface water and running water they can lay down no clear rule that will apply in every case to overflow water. Each case must be decided according to the facts presented. In this State the rule of the civil law has always been followed, and no distinction has been made from the time of *Gillham* v. *Madison County Railroad Co.* 49 Ill. 484, as to surface water and running streams. In *Gormley* v. *Sanford,* 52 Ill. 158, this court said (p. 162): "In our judgment the reasoning which leads to the rule forbidding the owner of a field to overflow an adjoining field by obstructing a natural water-course fed by remote springs applies with equal force to the obstruction of a natural channel through which the surface waters derived from the rain or snow falling on such field are wont to flow. What difference does it make, in principle, whether the water comes directly upon the field from the clouds above or has fallen upon remote hills and comes thence in a running stream upon the surface, or rises in a spring upon the upper field and flows upon the lower? The cases asserting a different

rule for surface waters and running streams furnish no satisfactory reason for the distinction." To the same effect are *Toledo, Wabash and Western Railway Co.* v. *Morrison,* 71 Ill. 616, *St. Louis, Vandalia and Terre Haute Railroad Co.* v. *Capps,* 72 id. 188, *Peck* v. *Herrington,* 109 id. 611, *Ohio and Mississippi Railway Co.* v. *Ramey,* 139 id. 9, and *Ohio and Mississippi Railway Co.* v. *Thillman,* 143 id. 127.

The rights of the servient and dominant proprietors being the same whether the waters are surface or channel waters, there is no reason for attempting any distinction in the discussion of flood waters; and if there were any distinction, except on the question of variance, it could not avail appellant, because if the flood waters are not held to be surface waters they will partake somewhat of the character of the waters of running streams, and the more they partake of that character the more strictly will the rule be applied, under all authorities, that each must use his own so as not to injure his neighbor.

Since the briefs in this case were written this court has decided the case of *Pinkstaff* v. *Steffy,* 216 Ill. 406, in which it was contended a distinction should be made between overflow and surface waters. After referring to certain cases heretofore cited, we there said (p. 412) : "It might with equal force be inquired here what difference it can make, in principle, whether the water that submerges the land of Steffy comes from the hills above the land or comes from the overflow of a stream along the same. We are unable to see either the distinction or the ground for one. Both are natural consequences. Both are burdens cast upon the adjacent lands by the laws of nature, and, as applied to such creeks and streams as the one in question, we have no doubt that the correct rule is 'that waters which have overflowed the banks of a stream in times of freshet, in consequence of the insufficiency of the natural channel to hold them and carry them off, are surface waters, within the meaning of the rules of law relative to such waters.' (24 Am. & Eng.

Ency. of Law,—1st ed.—903.) Whether this law would obtain when applied to large rivers is not before us and we do not decide."

Wood river, in this case, is shown by the record to be substantially the same size as the stream described in *Pinkstaff* v. *Steffy, supra.* One witness says, in dry weather one can step across the water; that the channel itself at the top of the banks varies in width from forty to one hundred and forty feet, and the tops of the banks vary in ordinary low water from eight to eighteen feet above the water.

Appellant also contends that it did not construct the embankment, and that appellees' claim against appellant can only be upheld for maintaining it after notice has been given that it was improperly constructed, and that there was no such notice. On the question as to whether notice was actually given the decision of the Appellate Court must be held conclusive. But the records are not entirely clear as to whether appellant did not build the embankment. Admitting that it did not, notice having been served that the embankment was improperly constructed, it does not follow that because appellant attempted to remedy the defect it cannot thereafter be held responsible. We are inclined to hold that the statement relied on by appellant in *Groff* v. *Ankenbrandt,* 124 Ill. 51, where this court said (p. 55): "Where a party comes into possession of land, as grantee or lessee, with an existing nuisance upon such land, and he merely permits the nuisance to remain or continue, he cannot be held liable in an action for damages until he has been first notified or requested to remove the nuisance," does not apply to this class of cases, and that this court did not so intend when it rendered the decision in *Groff* v. *Ankenbrandt, supra.* In any event, after the notice was served this case must fall within that class of cases where it is held that each overflow upon the land of an adjoining owner caused by the negligence or want of skill in a railroad company in its mode of constructing or maintaining an embankment is a fresh nuisance and

creates a new cause of action. *Ohio and Mississippi Rail-way Co.* v. *Thillman, supra; Sanitary District* v. *Ray,* 199 id. 63, and cases there cited.

Appellant contends that the damage was caused by such an unprecedented rainfall that it is not liable; that the damage was caused by "an act of God." In *Ohio and Mississippi Railway Co.* v. *Ramey, supra,* in discussing this question, we said (p. 13) : "The principle clearly is, that although a rainfall may be more than ordinary, yet if it be such as has occasionally occurred, and, it may be, at irregular intervals, it is to be foreseen that it will occur again, and it is the duty of those changing or restraining the flow of water to provide against the consequences that will result from it. It is within the knowledge of all who have long resided in this State that our streams are occasionally subject, after intervals which are sometimes of shorter and at other times of longer duration, to great floods, occasioned by very heavy rainfalls, and their heights are known by those who have felt interested in them. Such rainfalls were not usual and ordinary, but they were unusual and beyond ordinary,—*i. e.,* they were extraordinary; and yet it is just as certain that like rainfalls will occur in the future as it is that the same laws of nature by which they are produced, and the same conditions to be affected by those laws, will continue to exist in the future as they have in the past. Though of rare occurrence, such rainfalls are not phenomenal and therefore beyond reasonable anticipation, and it is hence but the prudence that a discreet man would exercise in his own affairs to provide against injury from them. The question, then, is not whether appellant has sufficiently provided for the escape of the water of ordinary floods, but has it provided for the escape of the water of such unusual or extraordinary floods as it should have anticipated would occasionally occur in the future, because they had occasionally occurred after intervals, though of irregular duration, in the past." There was a great deal of evidence submitted on

this question, some of it conflicting, but from the evidence in this record it could not by any possible means be held that the damage was caused by such an unprecedented rainfall as could not have been reasonably anticipated. (*Drainage Comrs.* v. *Illinois Central Railroad Co.* 158 Ill. 353; *Ohio and Mississippi Railway Co.* v. *Thillman, supra.*) In any event, this was solely a question for the jury, and if they were correctly instructed on that point this court cannot interfere.

Much complaint is made by appellant as to instructions given and refused. In view of our holding on the attempt to distinguish between the rules that apply to flood waters and surface waters the criticism of the instructions largely falls. The trial court gave three instructions for appellees and twenty-three instructions for the appellant and refused eleven of appellant's requested instructions. It is true that some of the refused instructions are applicable to certain questions in the case and state correct propositions of law, but after a careful review of all of them we agree with the holding of the Appellate Court "that the jury was fully and favorably instructed upon appellant's theory of the case in twenty-two instructions which the court gave at its instance and on its behalf, and we find that all that is material and proper to have been given in the nine refused instructions is in some way embraced in some one or more of those that were given." Duplicating instructions on the same point is very liable to mislead the jury and the practice ought not to be encouraged by the courts. The instructions did not improperly apply the law to the evidence in the case. They were, on the whole, as favorable to appellant as the evidence and law justified.

The judgment will be affirmed.

*Judgment affirmed.*