# Albert Drda, Appellee, v. Illinois Terminal Railroad Company, Appellant.

1. RAILROADS, § 350*—*when damage to crops by flood shown.* In an action by one as owner of certain land and as tenant of other land to recover damages for the overflowing of land occupied by him, alleged to be due to the construction of a railroad embankment across a river valley without leaving sufficient outlets, evidence *held* to sufficiently show that plaintiff's crops were damaged by water flooding his lands.

2. RAILROADS, § 349*—*what is question for jury in action to recover for damage to crops because of flooding of land.* In an action by one as owner of certain land and as tenant of other land to recover damages for injury to his crops by overflow alleged to be due to the construction of a railroad embankment by defendant across a river valley without leaving sufficient outlets, it was a question of fact for the jury whether such overflow was due wholly to such an extraordinary flood as ordinary prudence could not have anticipated, or wholly to defendant's defective construction of its bridges and embankments, or both causes.

3. RAILROADS, § 330*—*what is duty of railroad company as to outlets for floods through railroad embankment.* It is the duty of a railroad company, in constructing an embankment and bridges for its right of way over a river valley, to provide ample outlets for the waters of such floods or freshets as men of ordinary prudence could have foreseen, but not against the waters of such extraordinary floods as could not have been reasonably anticipated.

4. RAILROADS, § 349*—*what· are questions for jury in action against railroad for injury to crops because of flooding of land.* The questions as to what was an extraordinary flood in a particular river valley and whether the rain which caused injury to the crops of a person near a railroad embankment across the valley was an extraordinary flood, were questions for the jury, in an action against

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the railroad company for injury to plaintiff's crops because of insufficient outlets in the embankment.

5. Railroads, § 330*—*when duty of railroad obstructing flow of water of river to provide against extraordinary rainfalls.* Although a rainfall may be extraordinary, yet if it be such as has occasionally occurred, even though at irregular intervals, it is to be foreseen that it will occur again, and it is the duty of a railroad company which changes the course of a river or obstructs the flow of water by changes in its embankment across a river valley to provide against the consequence of such a rainfall.

6. Railroads, § 350*—*when overflow of land shown to be due to construction of railroad embankment and defective outlets.* In an action by one as owner of certain land and as tenant of other land to recover for injury to his crops as the result of a flood, evidence *held* sufficient to sustain a finding that the overflowing of plaintiff's lands was caused by defendant's embankment over the river valley and by its defective construction of outlets through such embankment.

7. Railroads, § 334*—*when railroad constructing embankment over river valley liable for injury to crops by flood.* Even though the rainfall of a particular year is unprecedented, yet if the act of the railroad company in constructing an embankment over the river valley and its bridges contributed together with an unprecedented flow of waters in the river to the flooding of land and injury to crops of one near the river valley and embankment, the railroad company would be liable for the injury caused thereby.

8. Instructions, § 159*—*consideration as a series.* Any inaccuracy in a particular instruction cannot be complained of where all of the instructions, when considered together with the allegations of the pleadings and proofs in the case, fairly state the law.

9. Instructions, § 158*—*how must be considered.* Instructions must be considered in the light of the allegations of the pleadings and proofs in the case.

10. Railroads, § 352*—*when instructions in action against railroad company for injury to crops because of overflowing of land are correct.* In an action by one as owner of certain land and as tenant of other land to recover damages for injury to crops because of the overflowing of his land due to the construction of a railroad embankment over a river valley with insufficient outlets, *held* that the instructions, considered as a series, correctly stated the principles of law applicable to the case.

11. Railroads, § 315*—*what are rights of railroad company as to change of channel of stream.* Although a railroad company which has constructed an embankment on its right of way across a river

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

valley has the right to change the channel of the river upon its right of way by straightening it out, yet in making such change it has no right to obstruct or in any way interfere with the flow of water.

12. RAILROADS, § 342*—*when successive recoveries may be had for successive injuries by overflow of land due to construction of road across stream.* The duty of a railroad company to so construct and maintain its road across a stream as not to injure adjacent land by throwing water back upon it is a continuing one, and each overflow resulting from a neglect of that duty creates a new cause of action for any injury thereby occasioned to the crops and land, and successive recoveries may be had for successive injuries caused by such negligence.

Appeal from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed April 5, 1918.

H. S. BAKER, A. M. FITZGERALD and WARNOCK, WILLIAMSON & BURROUGHS, for appellant.

BURTON & BURTON, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This is an appeal from a judgment against the Illinois Terminal Railroad Company in favor of Albert Drda for $750.

The case was tried on a declaration of one count alleging, in substance, that on August 13, 1916, and prior thereto, appellee was in possession of the southwest quarter of Section 34 in Ft. Russell township, Madison county, Illinois, owning and farming the north 70 acres thereof and being in possession of and farming the south 90 acres thereof as a tenant; that prior to said date appellant built its railroad across Cahokia Creek Valley downstream from appellee's land and filled up and totally closed the natural channel of Cahokia Creek where it was crossed by said

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

railroad and constructed a solid embankment across the same 25 feet high and 100 feet wide; that appellant dug an artificial channel for said creek about 400 feet south and east of the natural channel, which artificial channel was against and partly in a high bluff, and negligently constructed and left as a sole outlet for the waters coming down said valley a concrete opening of insufficient size, with a bridge thereover; that on August 13 to 19, 1916, heavy rainstorms occurred and the waters naturally flowed down said valley and would have flowed off towards the west and south but were obstructed and prevented from so doing by said embankment, and accumulated and flowed against said embankment to a depth of several feet and for a width of a quarter of a mile and were held back upstream for several miles; that said waters were held back on appellee's land several days until they could escape through said artificial opening, and flooded and destroyed certain crops then growing on his land.

Appellant filed the general issue and four special pleas. The second special plea was the ordinary plea of the statute of limitations. The other special pleas alleged, in substance, that said embankments, openings, culverts and bridges were constructed in accordance with proper railroading and railroad engineering, and were and at all times since have continued to be sufficient and adequate for any and all natural water flowage which could reasonably and prudently be expected down said valley; that said embankments, openings, culverts and bridges constituted a permanent and lawful structure, so that any damages that might have been caused thereby accrued to the lands and premises when such structures were built, the measure of which was the depreciation in the market value of the lands, and that none of such damages occurred to the appellee within 5 years; also that the crops claimed to be damaged were grown by appellee

as tenant, subsequent to the building of said embankment, and for them appellee would have no cause of action.

Appellee filed appropriate replications, alleging, among other things, that appellant did not construct its railroad embankment across Cahokia Creek Valley in the manner required by law and did not restore the same to its former state or to such state as not to unnecessarily impair its usefulness; that it did not construct its embankment across said creek valley with culverts, openings and bridges as provided by law suitable and sufficient to permit the waters which naturally flowed down Cahokia Creek and the valley to pass through the same in proper, natural and lawful manner; that appellant completely filled up the natural channel of said creek with said railroad embankment and unlawfully changed said natural channel and obstructed the flow of water down said valley until about August 21, 1915, when on account of the improper obstruction of the natural flow of waters down said valley, the culverts, waterways and bridges described in the declaration were washed out and destroyed by a large rain and overflow in said valley; that said embankments, bridges and culverts were afterwards negligently, improperly and unlawfully repaired and restored by appellant and have ever since that time been maintained without sufficient, adequate or lawful openings to permit the flood waters to flow through the same in their natural and proper course; that said embankment of August, 1916, was not a permanent and lawful structure, and had never been such, and appellee's right to recover was not for damages or injuries to his land but because said embankment constituted a continuing nuisance on account of its defective and unlawful construction. Appellant's railroad where it crosses Cahokia Creek Valley runs almost north and south, and the valley, which at this place is approximately 1,300 feet wide from bluff to

bluff, runs nearly east and west. The old Madison county railway constructed its railroad across the valley 50 years ago. It was located upon an embankment about 400 feet east of and upstream from appellant's road and runs practically parallel to the railroad until it approaches the north side of the val-ley, when it turns to the northwest and crosses appel-lant's right of way. Appellant used this road under a lease until it built its own road across the valley in 1904 and 1905, since which time the former road has not been used. Appellant's road is located upon an embankment about 25 feet high, 40 feet wide at the top and 100 feet wide at the bottom and crosses the old Madison county railway overhead, that is, the latter road passes through appellant's embankment and be-neath its tracks.

Cahokia Creek is a tortuous and meandering stream, and, at the time appellant built its road and embank-ment, flowed from the east along the bluff on the south side of the valley for several hundred feet west, until it reached appellant's right of way, where it turned to the north and flowed along the right of way to a point half across the valley, where it turned to the west across the right of way and then flowed to the southwest back to the south bluff, forming practically a half circle or horseshoe. When appellant first con-structed its embankment across the valley, it left three openings for the passage of the water. One about 58 feet wide was over the old Madison county railroad and on the north side of the valley; another was a trestle bridge about 180 feet wide at the top, and 50 feet wide at the ground, over the old channel of the creek near the center of the valley. The third was a steel bridge 66 feet wide, near the south side of the valley. These openings remained until the fall of 1911, when appellant began to fill the opening over the old channel near the center of the valley. By the fall of

1912 or the spring of 1913, the embankment was extended across the creek channel and the curve or half circle in the creek was eliminated by the digging of a new channel through the 66-foot opening on the south side of the valley. Three civil engineers testifying for appellant stated that this straightening of the channel enabled the water to flow down the stream more rapidly. One civil engineer testifying for appellee contended that by this change in the channel the water was thrown against a high bluff and the flow thereby retarded. The filling in of the old channel left the embankment across the valley with only two openings; one over the old Madison county railroad, on the north side of the valley, and the 66-foot opening on the south side of the valley through which the new channel was made to pass. This condition remained until some time between August 17 and 21, 1915, when there was a rainfall in that vicinity of 11.04 inches, and as a result the entire valley was flooded from bluff to bluff to a depth of 17 to 17½ feet on the upper side of the embankment and 10 to 11 feet on the lower side, the water reaching an elevation at appellant's bridge of 466.5 (Memphis datum). On August 21st, the concrete abutments on either side of the 66-foot opening in appellant's embankment on the south side of the valley were undermined and fell into the creek, and before the water finally subsided about 100 feet more of the embankment at this place were washed away. During the fall of 1915 and the spring of 1916, appellant rebuilt the bridge that was washed away. The new bridge consists of a center span resting upon two concrete piers 112 feet apart, and a 50-foot span at each end. It is 212 feet long on top and the center span is 104 feet in the clear from the top to the bottom. At either end is a concrete abutment placed in the embankment and the embankment slopes downward towards the concrete piers. When the bridge was rebuilt the concrete abutments from the old

bridge which had fallen into the channel were blown up with dynamite and partly removed, but some of the material was allowed to remain.

Appellee's lands are situated upstream from appellant's embankment in a northeasterly direction. They are not located on Cahokia Creek but on Burroughs Branch, which flows into Cahokia Creek from the north. It is about one-half mile from the south line of appellee's land to Cahokia Creek measured along Burroughs Branch and about three-quarters of a mile from the confluence of Burroughs Branch with Cahokia Creek to appellant's embankment. In August, 1916, from the 12th to the 15th, both inclusive, there was a rainfall in that community of 6.63 inches, and Cahokia Creek Valley was again flooded from bluff to bluff. The water above appellant's embankment was 7 to 7½ feet deep, attaining an elevation of 455.7. No damage was done to appellant's bridge by this rain but appellee's lowlands were overflowed, the crops growing thereon were injured and this suit was brought to recover damages. Appellee contends that by reason of the insufficient openings in appellant's embankment the water was held, retained and backed up Cahokia Creek to the mouth of Burroughs Branch, thereby causing the same to back up and overflow his lands. Appellant contends that the lands of appellee would have been overflowed whether there was any embankment or not; that appellant was in no way responsible for the injury to his crops and that whatever damage he may have suffered was due to natural causes.

The grounds upon which a reversal of the judgment is asked by counsel for appellant in their argument are: First, the verdict was against the weight of the evidence; second, it was error to give certain of appellee's instructions; third, appellant had the right to change the channel upon its own right of way; fourth, the construction complained of was permanent and

any damages occasioned thereby occurred when it was, erected, the measure of which was the depreciation in market value; and fifth, appellee's damages, if any, were due to natural causes. The evidence conclusively shows that appellee's crops were damaged by water flooding his lands. It was a question of fact to be determined by the jury whether such overflow was due wholly to such an extraordinary flood as ordinary prudence could not have anticipated, or wholly to the appellant's defective construction of its bridges and embankments or both causes. (*Ohio & M. Ry. Co. v. Thillman*, 143 Ill. 127.) In constructing its embankment and bridges across Cahokia Creek Valley, it was appellant's duty to provide ample outlets for the waters of such floods or freshets as men of ordinary prudence would have foreseen, but not against the waters of such extraordinary floods as could not have been reasonably anticipated. What was an extraordinary flood in that particular valley, and whether the rain of August, 1916, was an extraordinary flood, were questions of fact for the jury. (*Ohio & M. Ry. Co. v. Thillman, supra.*) This suit was brought to recover damages caused by the flood of August, 1916, which the evidence shows was not as large as the flood of August, 1915. The water in August, 1915, reached an elevation of 466.5 at appellant's bridge, but in August, 1916, after appellant had rebuilt its bridge, the elevation reached was only 455.70. There is also a notation on the map, introduced in evidence by appellant, showing a water elevation of 457.2 at appellant's bridge in 1904. H. H. Ferguson, manager of appellant, who had been familiar with Cahokia Creek Valley since 1899, testified that the waters in times of flood had always run up as high as they did in 1916. The doctrine is well established that although a rainfall may be more than ordinary, that is extraordinary, yet if it be such as has occasionally occurred, even though at irregular intervals, it is to be foreseen that

it will occur again, and it is the duty of those chang-
ing or obstructing the flow of water to provide against
the consequence of such a rainfall. (*Ohio & M. Ry.
Co. v. Ramey,* 139 Ill. 9; *Chicago, P. & St. L. Ry. Co.
v. Reuter,* 223 Ill. 387.) While Cahokia Creek in times
of ordinary stage of water was confined to a narrow
channel, yet in times of heavy rains, prior to the con-
struction of appellant's embankment, the water fre-
quently extended from bluff to bluff, as clearly estab-
lished by the evidence. It was as much appellant's
duty to provide for the escape of this ordinary over-
flow water as for the channel water. As an outlet for
both this channel water and overflow water, appellant,
when it filled the old channel in 1913, provided only
two openings; one at the concrete bridge over the new
channel at the south side of the valley, and the other
at the right of way of the old Madison county railroad,
on the north side of the valley. The evidence shows
the water would have to reach a depth of 8 or 9 feet
in the valley before it would flow through the north
opening.

By returning a verdict for appellee, the jury in
effect found that the overflowing of appellee's lands
was caused by appellant's embankments and its de-
fective construction of outlets, and the facts appear
to sustain such findings. Even though the rainfall of
August, 1916, had been unprecedented, yet if the act
of appellant in constructing its bridges and embank-
ments contributed together with such unprecedented
flow of waters, to the flooding of appellee's lands, ap-
pellant would be liable at law for the injury caused
thereby. (*Ohio & M. Ry. Co. v. Thillman, supra;
Voudrie v. Southern Ry. Co.,* 155 Ill. App. 279.)
Under the proofs in the record we would not be justi-
fied in disturbing the verdict of the jury.

The instructions complained of raise a more serious
question. The most vital objection urged is that they
inform the jury appellee is entitled to recover, if the

openings through appellant's embankment were insufficient to properly carry off the rain and flood waters naturally coming down the valley in times of heavy rains and floods and appellee was damaged thereby; and also that they fail to advise the jury appellant was not bound to provide openings sufficient to care for the waters produced by extraordinary rains or floods. While not as accurately drawn in this respect as they might have been, yet the instructions in this case, when considered as a whole and read as a series, fairly advise the jury of the law applicable to the case. They should be read in connection with the language of all the instructions, the allegations of the pleadings and the proofs in the case. (*Ohio & M. Ry. Co. v. Thillman, supra.*) It was not necessary for each and every instruction expressly to state appellant was not bound to provide sufficient openings for the waters of extraordinary rains or floods. Instructions given for appellant told the jury that the railroad company in constructing its embankment and railroad across the Cahokia Creek Valley, at the place in question, was not required under the law to leave an opening through its embankment over said creek or valley sufficiently large to admit the flow and passage of unusual or extraordinary rains or floods, that is, such rains or floods as would not reasonably be expected or anticipated. Also that although the jury might find from the evidence that appellee sustained the damages claimed in his declaration, yet if they further believed from the evidence that the same resulted solely from an unprecedented rainfall or extraordinary freshet, such as would not reasonably be expected or anticipated by prudent persons, and that such damages would not have resulted but for such unprecedented rainfall or extraordinary freshet, they should find the defendant not guilty. On the part of appellee, the jury were instructed that appellant in building its embankment and constructing

the concrete openings was required to provide suffi-
cient openings, not only for waters that naturally
came there in times of ordinary rain, but also for
drainage of such unusual or extraordinary floods as
naturally came there as it should have anticipated
would occasionally occur in the future, because they
had occasionally occurred after intervals, though of
an irregular duration, in the past.  Also that even if
the rainfall in question was of such extraordinary
character and extent as to justify the jury in finding
it was unprecedented or that it was an act of God,
which appellant was not bound to anticipate or guard
against, yet if they further found that appellant con-
structed its solid embankment entirely across the
creek valley and left insufficient openings for the
waters naturally coming there in times of heavy rains
and floods and that this fact, if such be a fact, in con-
nection with the extraordinary rainfall, produced or
caused the damage, if any, to appellee's crops, then
appellant would still be liable for such damage.  These
instructions when read with the other instructions in
the case, and considered in connection with the plead-
ings and proof, appear to us to have correctly stated
the principles of law applicable to the case, and ap-
pellant's objections to the instructions above referred
to are not well founded.  (*Ohio & M. Ry. Co. v.
Ramey, supra; Chicago, P. & St. L. Ry. Co. v. Reuter,
supra.*)

It is especially urged that appellee's instruction 8
is erroneous because in referring to the embankment
the following words are used: "As constructed and
as it existed in August, 1915 and 1916."  An exam-
ination of the record shows that counsel's argument
in this behalf is based upon a misapprehension of the
wording of the instruction, for while the abstract
shows the figures "1915" and the word "and" they
were crossed out in the record so that the portion ob-

jected to reads ''as constructed and as it existed in August, 1916.''

While appellant had the right to change the channel of the creek upon its right of way, yet in making such change it had no right to obstruct or in any way interfere with the flow of water. This doctrine was recognized by the Supreme Court of this State in the early case of *Gillham v. Madison County R. Co.*, 49 Ill. 484, and that decision has since been consistently followed. Appellant's contention that the embankment was a lawful and permanent construction and that any damages occasioned thereby accrued when it was erected, the measure of which was the depreciation in market value, and for which there could be only one recovery and that within 5 years from the time it was erected, would be well taken if this were a suit to recover damages resulting from the construction of the embankment. The cause of action set forth in the declaration is not for the recovery of damages resulting from the construction of the embankment, but for the recovery of damages resulting from the defective and negligent construction of the embankment by failing to provide sufficient openings for the water, or, in other words, this is a suit to recover damages resulting from an improper construction of the embankment and the openings through the same. This is a cause which the landowner could not have anticipated and could not have recovered for in condemnation proceedings. The principle is well established in this State that ''the duty of a railroad company to so construct and maintain its road across a stream as not to injure adjacent land by throwing water back upon it is a continuing one, and each overflow resulting from a neglect of that duty creates a new cause of action for any injury thereby occasioned to the crops and land,'' and successive recoveries may be had for successive injuries caused by such negligence. (*Ohio &*

*M. Ry. Co. v. Thillman, supra; Sanitary Dist. of Chicago v. Ray,* 199 Ill. 63; *Ramey v. Baltimore & O. S. W. R. Co.,* 235 Ill. 502.) The cause of action set forth in the declaration falls within that class of cases.

. The claim of appellant that the damages sustained by the crops of appellee in the year 1916 were due to natural causes, that is, that they would have happened if the embankment had not been there, does not appear to be borne out by the proofs. The verdict in the case seems to be in harmony with the facts, there was no substantial error committed by the court in the trial and the judgment will be affirmed.

*Affirmed.*