ADMIRAL BUILDERS CORP., Plaintiff-Appellant, *v.* ROBERT HALL VILLAGE *et al.*, Defendants.—(HANDELS-EN PRODUCTIEMAATSCHAPPIJ DE SHOUW B. V., Defendant-Appellee.)

First District (2nd Division)    No. 80-2718

Opinion filed October 20, 1981.

Pressman & Hartunian, Chartered, of Chicago, for appellant.

Mitchell S. Goldgehn and Nathan H. Lichtenstein, both of Goldgehn, Leonardo, Goldgehn & Isaacson, of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

This is an appeal from a summary judgment entered by the circuit court of Cook County in favor of the defendant, Handels-en Producti-emaatschappij de Shouw B.V. (Handels), and against the plaintiff, Admiral Builders Corporation (Admiral), in an action alleging the creation and maintenance of a continuing nuisance and encroachment upon land owned by Admiral.

Admiral and Handels are adjoining landowners, Handels having purchased its property on July 27, 1978, from the Hanover Hoffman Corporation. In 1974 Admiral had filed a suit against Hanover Hoffman Corporation and Hanover Development Corporation (collectively referred to as Hanover) alleging that Hanover was responsible for the creation of a continuing nuisance and encroachment upon Admiral's property. Admiral did not file a *lis pendens* notice of its action against Hanover. In September 1979 Admiral sought to join Handels as a party defendant to its suit against Hanover. Handels asserts that as of the time it purchased the property in question from Hanover, it had no knowledge of Admiral's pending suit against Hanover.

The following issues are presented: (1) whether Admiral's failure to file *lis pendens* notice (Ill. Rev. Stat. 1973, ch. 22, par. 53, subsequently transferred to Ill. Rev. Stat. 1979, ch. 110, par. 405) precludes it from joining Handels as a party defendant in an action for nuisance; (2) whether Admiral's cause of action against Handels is barred under the doctrine of equitable estoppel; and (3) whether Admiral's cause of action against Handels is barred under the doctrine of laches.

For the reasons hereinafter set forth, we reverse and remand.

Admiral owns a parcel of land in Hoffman Estates, Illinois. The East Branch of Poplar Creek flows in a southerly direction near the east boundary of Admiral's land. In 1972 Hanover purchased land adjacent to

the east boundary of Admiral's property, and the following year Hanover began construction of a shopping center on its land.

In the course of construction Hanover graded its property. Prior to such grading, the land on both sides of Poplar Creek sloped gently upwards from the river bed. When the river was at low ebb it flowed within its natural banks, which were entirely within the boundaries of Admiral's property. During periods of heavy rain or melting snow, the river swelled, flooding both Admiral's property and the western boundary of Hanover's property.

In grading the site destined for the shopping center, Hanover removed dirt from the eastern edge of its property and deposited that dirt along the western edge of its property and along the eastern boundary of Admiral's property. The natural flood plain was thus altered. Hanover also paved portions of the shopping center site, which Admiral alleged caused rainwater to flow across Hanover's property and into the river at a faster rate than had previously occurred.

Admiral complains that its property is inundated during heavy rainstorms and floods to a greater extent than occurred prior to the construction of the shopping center. Admiral also alleges that the storm water retention system installed for the shopping center does not adequately contain floodwaters from the river nor retard the increased flow of rainwater from the development site to the river. Admiral asserts further that flooding conditions on its eastern boundary are aggravated by the erosion of the dirt fill that had been placed by Hanover on the western side of Hanover's property. The dirt obstructs the flow of water into the river, causing damage to vegetation at the east boundary of Admiral's property.

As previously noted, Admiral in 1974 filed suit against Hanover, Hanover's civil engineer, Brian Mays Engineering Company and Hanover's principal tenant, Robert Hall Village, seeking compensatory damages, punitive damages and injunctive relief from the continuous injury to Admiral's property. Admiral requested that the defendants be ordered to remove the dirt which had been placed on Admiral's property, to restore the flood plain to its natural state, and to install an adequate stormwater retention system.

In 1975 Hanover conveyed the shopping center property in trust to LaSalle National Bank. On July 27, 1978, during pendency of Admiral's suit against Hanover, the trustee sold the Hanover property to Handels. The sales contract provided a warranty by Hanover that the shopping center property was not subject to any pending legal actions.

Following the sale of the property to Handels, the shopping center was leased back by Handels to Hanover, which presently manages the property. Admiral alleged that as of the date on which Handels purchased

the property, "the nuisance and encroachment" on Admiral's property had not been abated. Handels contends that it had no actual knowledge of the existence of the nuisance action against Hanover.

On May 29, 1979, the trial court dismissed Admiral's action against Hanover for want of prosecution. Within a few days thereafter, upon Admiral's motion, the dismissal order was vacated.

Admiral contends that it was not until August 23, 1979, that it became aware that on July 27, 1978, Handels had purchased the shopping center. Upon making this discovery, Admiral moved for leave of court to join Handels as a party defendant to its action against Hanover. Handels was served with an amended complaint on September 10, 1979. The amended complaint repeated the allegations of the original complaint and requested the same relief earlier sought by Admiral against Hanover except that punitive damages were sought only against the Hanover group of defendants.

On October 22, 1979, Hanover moved to dismiss the action on the ground of laches. This motion was denied. On February 8, 1980, Handels filed its answer to Admiral's amended complaint, admitting ownership of the property but denying all other allegations.

On June 3, 1980, Handels filed a motion for summary judgment. In support of its motion Handels filed an affidavit stating that prior to the time it purchased the Hanover property, it had never received formal notice of the pending suit against Hanover and that it had found no recorded notice of *lis pendens*. Handels contended that Admiral was barred from proceeding against Handels due to the doctrine of laches, the doctrine of equitable estoppel, and Admiral's failure to file *lis pendens* notice.

On September 18, 1980, the trial court granted Handels summary judgment. Neither written findings nor a written opinion was issued by the trial court. On October 10, 1980, Admiral moved for reconsideration of the summary judgment order, which motion was denied. On October 17 Admiral filed its notice of appeal from both the order granting Handels summary judgment and the order denying Admiral's motion for reconsideration.

I

The first issue presented for review is whether Admiral's failure to file *lis pendens* precludes it from joining Handels in an action involving a continuing nuisance.

"*Lis pendens*" means a pending suit. Under the common law doctrine, and as originally codified by Illinois statute in 1917, anyone who purchased or otherwise acquired an interest in property involved in litigation took such interest subject to the outcome of the litigation as if he

had been a party thereto from the outset. The mere filing of a complaint affecting or involving real property served as constructive notice to any subsequent purchaser that such property was subject to pending litigation. See generally *Davidson v. Dingeldine* (1920), 295 Ill. 367, 129 N.E. 79; see also *Moore v. Zelic* (1930), 338 Ill. 583, 589, 170 N.E. 664; *Taylor v. Lanahan* (1979), 73 Ill. App. 3d 829, 831, 392 N.E.2d 425.

Binding a subsequent purchaser of property to the outcome of litigation of which he may have had no notice was considered by the courts a harsh rule. (See generally 51 Am. Jur. 2d *Lis Pendens* §7, at 954 (1970).) In 1963 the Illinois legislature acted to relieve the burden placed upon third-party purchasers and amended the 1917 statute to provide that the *lis pendens* doctrine does not take effect until notice of a pending lawsuit is filed with the office of the recorder of deeds in the county where the real estate involved in such suit is located. (Ill. Rev. Stat. 1979, ch. 110, par. 405.) Upon such filing, subsequent purchasers are charged with constructive notice of the underlying proceedings, provided service of process is made upon a party defendant within six months of the filing of the complaint.[1]

One purpose of *lis pendens* is the avoidance of endless litigation of property rights precipitated by transfers of interest. This end is achieved by conclusively binding one who obtains an interest in the property during the pendency of a suit affecting it to the result of that litigation as if he had been a party from the outset. In this respect the filing of *lis pendens* notice is designed to protect a plaintiff from third persons who might acquire, during the pendency of litigation, interest in the subject matter of the litigation such as would preclude the court from granting the plaintiff the requested relief. (51 Am. Jur. 2d *Lis Pendens* §1 (1970); *E. &*

---

[1] The Illinois statute referred to as "Constructive Notice of Suits in Equity, etc." provides in pertinent part:

"*Every* condemnation proceeding, proceeding to sell real estate of decedent to pay debts, or other *suit seeking equitable relief, affecting or involving real property shall, from the time of filing in the office of the recorder of deeds in the county where the real estate is located of a notice* signed by any party to the suit or his attorney of record or attorney in fact on his behalf, setting forth the title of the cause, the parties to it, the court where it was brought and a description of the real estate, *be constructive notice to every person subsequently acquiring an interest in or a lien or the property affected thereby, and every such person* and every person acquiring an interest or lien as aforesaid, not in possession of the property and whose interest or lien is now shown of record at the time of filing such notice, *shall, for the purposes of this Act, be deemed a subsequent purchaser and shall be bound by the proceedings to the same extent and in the same manner as if he were a party thereto.* If in any such suit, plaintiff or petitioner shall neglect or fail for the period of 6 months after the filing of the complaint or petition to cause notice to be given the defendant or defendants, either by service of summons or publication as required by law, then such notice shall cease to be such constructive notice until service of summons or publication as required by law is had ° ° °." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 22, par. 53, transferred to Ill. Rev. Stat. 1979, ch. 110, par. 405.

*E. Hauling, Inc. v. County of Du Page* (1979), 77 Ill. App. 3d 1017, 1023, 397 N.E.2d 1260.) Another less widely recognized purpose of the doctrine is to protect purchasers by giving them notice that the land which they are buying might be affected by a judgment later entered in a pending action, by which they would be bound. *E. & E. Hauling, Inc.*, at 1023, citing the dissenting opinion in *Braunston v. Anchorage Woods, Inc.* (1961), 10 N.Y.2d 302, 222 N.Y.S.2d 316, 178 N.E.2d 717.

■■ The Illinois statute concerning *lis pendens* does not create an obligation to file *lis pendens* notice. The statute provides only that the filing of such notice will serve to bind purchasers of property *pendente lite* to such litigation as if they had been a party thereto.

In the case at bar, Admiral asserts that it does not seek to bind Handels to the outcome of its litigation against Hanover. Admiral seeks to bring an independent cause of action against Handels for the maintenance of a continuing nuisance.

■■ In *Chicago, Burlington & Quincy R.R. v. Schaffer* (1888), 124 Ill. 112, 121, 16 N.E. 239, the Illinois Supreme Court held that an action may be maintained for the *creation* of a nuisance and a subsequent and separate action maintained for the *continuance* of such nuisance. In *Chicago, Peoria & St. Louis Ry. Co. v. Reuter* (1906), 223 Ill. 387, 392-93, 79 N.E. 166, the supreme court also held that after a defendant had notice of the nuisance maintained upon its property, it would be liable for "each overflow upon the land of an adjoining owner caused by the negligence or want of skill [of the defendant] * * *" and that each overflow "is a fresh nuisance and creates a new cause of action."

■■ Thus it is clear that Admiral may maintain a cause of action against Handels for the continuance of a nuisance, and under section 24 of the Civil Practice Act[2] Admiral may join Handels to its suit against the Hanover group of defendants. (See *Rubin v. Boorstein* (1979), 73 Ill. App. 3d 689, 692, 392 N.E.2d 919; *Stavros v. Karkomi* (1976), 39 Ill. App. 3d 113, 123, 349 N.E.2d 599.) Whether as Handels contends it had neither actual nor constructive notice of the alleged nusiance being maintained upon its property does not preclude Handels from being named in an action by Admiral.

---

[2] Section 24 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 24) provides in part:

"(1) Any person may be made a defendant who, either jointly, severally or in the alternative, is alleged to have or claim an interest in the controversy, or in any part thereof, or in the transaction or series of transactions out of which the controversy arose, or whom it is necessary to make a party *for the complete determination or settlement of any question involved therein, or against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions regardless of the number of causes of action joined* * * *." (Emphasis added.)

Although Admiral's failure to file *lis pendens* notice precludes it from binding Handels to any judgment resulting from Admiral's suit against Hanover, Admiral's failure to file such notice does not, in our opinion, preclude it from maintaining a distinct cause of action against Handels for the continuance of a nuisance.

## II

The second issue presented for review is whether Admiral's cause of action against Handels is barred by the doctrine of equitable estoppel. Equitable estoppel has been defined as:

> "* * * the effect of the voluntary conduct of a party whereby he (or she) is absolutely precluded from asserting rights which might otherwise have existed as against another person who has, in good faith, *relied upon such conduct and has been led thereby to change his position for the worse*, and who on his part acquires some corresponding rights." (Emphasis added.) (*Slavis v. Slavis*, 12 Ill. App. 3d 467, 473, 299 N.E.2d 413.)

Reliance on the conduct of another by a party to his detriment is an essential element of equitable estoppel. (*Levin v. Civil Service Com.* (1972), 52 Ill. 2d 516, 288 N.E.2d 97.) Handels contends that it relied on the absence of recorded *lis pendens* notice in making its determination to acquire the Hanover property. Handels thus concludes that Admiral, in failing to file *lis pendens* notice, allowed Handels "to act to its detriment" and that Admiral should therefore be "estopped from asserting its claim against Handels in this cause."

In *People ex rel. Russel v. Michigan Avenue Trust Co.* (1924), 233 Ill. App. 428, 431, the court stated: "One may not maintain silence when it is his *duty to speak*, or *claim the benefit of his own negligence to the injury of another* * * *." (Emphasis added.)

In the case at bar we have established that Admiral was under *no duty* to file *lis pendens* notice, and it is *not claiming any benefit* from its failure to file to the injury of Handels. Thus, Handels cannot effectively claim that in purchasing the Hanover property, Handels had a right to rely on Admiral's failure to file notice of its suit against Hanover. Handels has failed to establish the detrimental reliance suffered as the result of any "negligent" conduct by Admiral. We conclude, therefore, that the doctrine of equitable estoppel is not applicable to the instant case.

## III

The third and final issue is whether Admiral's cause of action against Handels is barred by the doctrine of laches. The Illinois rule with regard to laches is succinctly stated in *Rogers v. Barton* (1944), 386 Ill. 244, 253, 53 N.E.2d 862:

"In an equitable proceeding it is only when *by delay or neglect to assert a right the adverse party is lulled into doing that which he would not have done* or into omitting to do that which he would have done in reference to the property had the right been properly asserted that the defense of *laches* will be considered." (Emphasis added.)

Laches has also been defined as "such neglect or omission to assert a right, taken in conjunction with a lapse of time * * * and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity." *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 552, 147 N.E.2d 341.

Whether the defense of laches is available must be determined upon the facts and circumstances of each case. (*Ryan v. City of Chicago* (1974), 25 Ill. App. 3d 333, 323 N.E.2d 117; *Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 360 N.E.2d 785.) There is no definite standard which can be applied in every case. *People ex rel. Fleming v. Conlisk* (1973), 11 Ill. App. 3d 520, 299 N.E.2d 537.

■■ Handels charges that Admiral is guilty of unreasonable delay in asserting a cause of action against Handels since Admiral did not move to join Handels as a party defendant to the suit against Hanover until September 1979, more than 5½ years after Admiral instituted suit against Hanover. Handels did not acquire an interest in the subject property, however, until 1978. Admiral could not have joined Handels prior to Handels' acquisition of an interest in the shopping center property and thus cannot be guilty of laches for failing to do so. See, *e.g.*, *Klajbor v. Klajbor* (1950), 406 Ill. 513, 520-21, 94 N.E.2d 502.

■■ Handels also asserts the defense of laches on the ground that Admiral unduly delayed its prosecution of Hanover. In effect, Handels seeks to avail itself of any defense of laches that Hanover may have against Admiral. Yet, it has been demonstrated that Admiral's cause of action against Handels, although arising out of essentially the same facts as the action maintained against Hanover, is a separate and distinct action. Even if Admiral could be considered guilty of undue delay in its prosecution of Hanover,[3] such delay would not give rise to the defense of laches in Admiral's separate suit against Handels. We hold, therefore, that the doctrine of laches does not bar Admiral's action against Handels.

Based on the foregoing discussion, we must conclude that Handels is not entitled to summary judgment on the grounds that Admiral failed to file notice of *lis pendens*, nor is it entitled to such judgment on the basis of equitable estoppel or laches. Summary judgment may only be granted when the pleadings, affidavits, answers to interrogatories, exhibits and

---

[3] The trial court dismissed Admiral's complaint against Hanover for want of prosecution on two separate occasions. On both occasions the trial court, on motion by Admiral, vacated the dismissal orders.

depositions on file establish that there is no genuine issue of material fact and that the moving party is entitled to such judgment. (See Ill. Rev. Stat. 1979, ch. 110, par. 57.) These documents should be construed by the trial court strictly against the party moving for summary judgment and liberally in favor of the opponent. Summary judgment should be granted only when these items leave no doubt that such an order is justified. See *Century Display Manufacturing Corp. v. D. R. Wager Construction Co., Inc.* (1977), 46 Ill. App. 3d 643, 648, 360 N.E.2d 1346.

■■ Since the record in the instant case does not clearly establish the absence of any genuine issue as to Handel's liability for the maintenance of a nuisance, the question of such liability should be left for determination by the trier of fact. Moreover, since neither the failure to file *lis pendens*, nor equitable estoppel nor laches bars Admiral's direct claim against Handels, and there remains an issue as to Handels' liability for the maintenance of a nuisance, the action of the trial court in granting summary judgment was premature. We therefore reverse and remand.

Reversed and remanded.

HARTMAN, P. J., and STAMOS, J., concur.