LUELLA R. PETTIT, Plaintiff-Appellee, v. BENTLEY B. PETTIT, JR., Defendant-Appellant.

Fourth District   No. 15957

Opinion filed June 17, 1980.

Richard B. Opsahl, of Allen & Korkowski & Associates, of Rantoul, for appellant.

W. Loren Thomson, of Thomson, Weintraub & Thompson, of Bloomington, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This litigation makes its second appearance in this court after our prior remand for reconsideration by the trial court of all provisions of the original decree concerning the division of the parties' property and awards of alimony to the plaintiff. Details of the former appeal appear at 60 Ill. App. 3d 375, 376 N.E.2d 782. Upon remand, the pleadings were amended, new hearings were held on the subjects of temporary alimony for the plaintiff and of final disposition of the parties' property, and a new decree was entered which is the subject of the instant appeal.

At the outset, because of the chronology involved, it is necessary to determine whether the remand proceeding and this appeal are governed by the former divorce act (Ill. Rev. Stat. 1975, ch. 40, par. 1 *et seq.*) (Divorce Act) or by the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*)(Dissolution Act).

Our prior opinion was filed May 26, 1978. It was concerned with a decree entered September 29, 1977. Notice of appeal from that decree was filed October 27, 1977. The Dissolution Act became effective October 1, 1977, and provides in part: "(b) This Act applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered. Evidence adduced after the effective date of this Act shall be in compliance with this Act." (Ill. Rev. Stat. 1977, ch. 40, par. 801(b).) It will thus be seen that on the effective date a complete judgment had been entered, disposing of all issues.

Section 801(b) was interpreted in *Staub v. Staub* (1978), 67 Ill. App. 3d 1004, 1007, 385 N.E.2d 771, 774, as follows:

"In our estimation, the legislature attempted through section 801(b) to allow only those issues which had not been fully litigated prior to the effective date of the new act to be decided under the

new law. It is not this section's intent to require the relitigation of issues already decided under the previous law simply because post-trial motions are pending or filed after the effective date of the new act."

This language was cited with approval by the supreme court in *West v. West* (1979), 76 Ill. 2d 226, 390 N.E.2d 880.

■■ The trial court exhibited some confusion over this situation which undoubtedly led to some of the error which will be discussed later in this opinion. The Divorce Act applies.

Upon remand, the trial court first held a hearing on plaintiff's petition for temporary support. This occurred on July 28, 1978, and was based on the oral testimony and the affidavits submitted by the parties. Plaintiff showed net assets of about $48,000 while defendant showed assets of $78,453 and liabilities of $90,946. The court ordered defendant to convey to plaintiff his interest in certain Arizona property as temporary alimony. The interest was said to be worth about $18,000, and a written order on temporary alimony was entered August 7, 1978. Defendant appeals from this order, together with the final order entered September 21, 1979.

Plaintiff filed an amended complaint on November 14, 1978, and in it she alleged the existence of various properties acquired by the parties and further alleged a claim of special equities in those properties. A final hearing was held September 14, 1979, at which the evidence was in large part a reiteration of that adduced at the hearing on temporary alimony on July 28, 1978. That evidence may be summarized as follows:

That plaintiff had kept the house, taken care of the children and cooked the meals; that she had helped in the fields with whatever had to be done, did the work of every farm wife, hauled in grain, went for parts, seed and fertilizer; helped with the home repairs; milked many cows and put the milk in the cooler, took meals to the field, cooked for hired men, painted and wallpapered; drove the tractor and worked the ground. This type of outside activity continued until the boys were big enough to help. In addition, plaintiff testified that during the course of the marriage she had accumulated monies by her own efforts which was the source of her savings, by tending a herd of sheep and other earnings at a hardware store. Plaintiff further testified that she remodeled and refurbished and maintained the houses that were bought and sold on the 21 farms that the parties had traded over the course of their marriage. Plaintiff testified over objection that up until the sale of the last farm the parties owned, everything including the personal property was in joint tenancy.

The defendant testified that the parties had received $367,171.34 from the sale of certain assets at the time just prior to their separation. Defendant further testified that he and the plaintiff were both worth around $320,000, and, that he considered the plaintiff a partner.

In its final order the trial court resolved all factual conflicts in the evidence against the defendant and in favor of the plaintiff and made the inconsistent finding that the plaintiff had proved special equities in the properties (apparently following the Divorce Act), but that they were marital property (seemingly following the Dissolution Act). The order then distributes the property as follows: (1) sets aside to the plaintiff all property in her own name and/or in her possession including the real estate in Arizona; (2) gives the marital home and attached lots to the plaintiff, together with an automobile and an antique clock; (3) orders defendant to obtain a release of a mortgage on the marital home and the clock; and (4) orders defendant to make periodic alimony payments of 40% of his gross earnings after taxes.

As indicated above, defendant has appealed both the final order of September 21, 1979, and the temporary order of August 7, 1978. He raises essentially four issues: (1) whether the case is controlled by the Divorce Act or the Dissolution Act of 1977; we have already disposed of this issue by holding that the former controls; (2) whether the final order constitutes an award of both periodic alimony and alimony in gross; (3) whether the trial judge abused his discretion in making the alimony award; (4) whether the trial judge erred in awarding the Arizona property in kind as temporary alimony.

In making his pronouncement concerning the applicable law the trial judge said, "I don't think it makes much difference which act we are under. * * * I don't think it makes too much difference and I think the results would be identical under either law." We disagree.

The Divorce Act allowed alimony in gross or periodic alimony, but not both. (*Overton v. Overton* (1972), 6 Ill. App. 3d 1086, 287 N.E.2d 47.) The Dissolution Act deems all property acquired during the marriage as marital property. The results can be far different. However, the Divorce Act did permit the award of a lump sum in addition to periodic payments, provided special equities were pleaded and proved. *Demos v. Demos* (1972), 8 Ill. App. 3d 906, 290 N.E.2d 304; *Rich v. Rich* (1975), 24 Ill. App. 3d 1083, 322 N.E.2d 610.

■■■ Defendant does not contest these legal principles but maintains that special equities were neither pleaded nor proved. As to pleading, paragraph 7 of the amended complaint alleges:

> "7. That the plaintiff claims special equities in all the properties mentioned in Paragraph 6 of this Complaint as well as other properties Defendant possesses by virtue of work and labor she has provided and by the contribution of her own funds from outside earnings in the acquisition and maintenance of these properties."

Defendant did not object to such pleading, nor ask that it be made more

definite and certain, and he has therefore waived the point by going to trial. *Shumak v. Shumak* (1975), 30 Ill. App. 3d 188, 332 N.E.2d 177.

The proof of special equities in the instant case is less clear. In *Everett v. Everett* (1962), 25 Ill. 2d 342, 347, 185 N.E.2d 201, in speaking about special equities, the supreme court said:

> "[I]t must be alleged and proved by the spouse seeking a part or all of the property in the name of the other that he or she has furnished valuable consideration such as money or services other than those normally performed in the marriage relation which has directly or indirectly been used to acquire or enhance the value of the property."

Looking at the testimony summarized above, we would probably be unable to say that under the circumstances of this case it established special equities, if it stood alone. However, on cross-examination the defendant testified as follows:

> "Q. Would it be a fair statement that each of you performed those tasks that were within your strength limitations working together to make the farm you owned a success?
>
> A. [Defendant]: I would have to say that I put in an awful lot of hours working while the rest of them were sleeping too.
>
> Q. And that is right, but she worked as pretty much as partner with you all the way through, isn't that true?
>
> A. I never said anything different than that."

Given the defendant's admission of a partnership relation with the plaintiff, it is our judgment that a situation tantamount to special equities has been created. It is therefore possible for the trial court to compel the conveyance of property as well as allowing periodic alimony under section 17 of the Divorce Act. Ill. Rev. Stat. 1975, ch. 40, par. 18.

We turn, then, to the question of the periodic alimony. As noted above, the trial court gave plaintiff 40%, after taxes, of defendant's gross income. The principles here involved are so familiar as to need no citation of authority. The award of any alimony and its amount is within the sound discretion of the trial judge and will not be disturbed unless there appears an abuse of that discretion. In general, the trial judge must consider not only the needs of the recipient but also the ability of the payor to pay. Each case turns on its own facts.

We find that the 40% was an abuse of discretion. The undisputed facts were that defendant was unemployed and when employed, earned only about $500 per month. On the other hand, plaintiff had a regular job at $4.12 per hour and worked between 40-60 hours per week It is obvious that the trial judge could not have considered the ability of the defendant to pay. Forty percent of zero is zero, yet in his order the trial judge directed defendant to mail a check in the amount of 40% of his gross

earnings weekly to the circuit clerk of Ford County. He also directed defendant to enclose with that check his pay stub which under the uncontroverted evidence did not exist. Even if defendant were employed at $500 per month, or $125 per week in round figures, the situation of the parties would be sufficiently disparate as to shock the conscience. Defendant would be required to send $50 of his $125, leaving him $75 per week on which to live—all this apart from the question of taxes. Fifty dollars added to plaintiff's wages for 40 hours yields $214.80 per week and for 60 hours, $297.20.

The final matter to be dealt with is the award of the Arizona land as temporary alimony. Temporary alimony in gross is clearly prohibited by section 15 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 16) which provides only for the payment of sums of money. *Rabin v. Rabin* (1965), 57 Ill. App. 2d 193, 206 N.E.2d 850.

There is an additional mystifying element in that the award of the Arizona land was reiterated in the final decree. The record is silent as to whether this was an incorporation of the temporary order or independent of it. In either event, the matter needs reconsideration by the trial court.

For all the foregoing reasons, the decrees of August 7, 1978, and September 21, 1979, are vacated and reversed and the cause is remanded to the circuit court of Ford County for a new hearing to be held under the Divorce Act in accordance with the views expressed herein. Specifically, and without limiting the foregoing, the trial court is directed to modify the award of periodic alimony in view of any equitable distribution of property to be made; to vacate the award of the Arizona property as temporary alimony and to consider anew whether it is subject to the admission of partnership in any equitable distribution.

Reversed and remanded with directions.

MILLS, P. J., and LEWIS, J., concur.