ALLEN & KORKOWSKI & ASSOCIATES, Plaintiff-Appellee, *v.* BENTLEY B. PETTIT, JR., Defendant.—(LUELLA R. PETTIT, Defendant-Appellant.)

Fourth District    No. 4—82—0011

Opinion filed August 9, 1982.

Gary R. Thompson, of Thomson, Weintraub & Thompson, of Bloomington, for appellant.

Allen & Korkowski & Associates, of Rantoul, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

This proceeding represents the fourth appeal in the ongoing litigation over the marriage dissolution and property distribution of the defendants. It concerns a mortgage given by defendant Bentley Pettit to his attorney, Richard B. Opsahl, a member of the plaintiff law firm, in payment of his fees for representing Pettit in the dissolution matter.

The history of the legal marching and countermarching is detailed in prior opinions (*Pettit v. Pettit* (1978), 60 Ill. App. 3d 375, 376 N.E.2d 782; *Pettit v. Pettit* (1980), 85 Ill. App. 3d 280, 406 N.E.2d 899) and need not be reiterated here. In addition to the two foregoing cases, a third appeal was filed in 1981, following the remand in the 1980 appeal, but it was dismissed for failure to file a docketing statement.

The chronology of the 1978 appeal is material to an understanding of the issues raised in the instant case. The 1978 opinion was filed May 26, 1978, and this court's mandate reversing and remanding was issued June 28, 1978. Among other reasons for such reversal and remand was the failure of Luella Pettit to plead special equities in the jointly held real estate of the parties. However, in the course of the opinion this court said, "Our decision on this question in no way restricts the trial court's power on remand to give further consideration to the question of whether it should permit amendment of the pleadings." (60 Ill. App. 3d 375, 380, 376 N.E.2d 782, 786.) Such amendment was apparently accomplished since in the 1980 appeal this court held that special equities had been established, but again reversed and remanded for clarification of the maintenance award.

Between the date of the filing of the 1978 opinion and the issuance of the mandate, specifically on June 6, 1978, Bentley Pettit exe-

cuted his promissory note in favor of the plaintiff in the instant case and secured it with a mortgage on certain real estate which the trial court had awarded to Luella Pettit in that proceeding.

In March 1981 plaintiff filed a suit for declaratory judgment in the circuit court of Champaign County (the dissolution proceedings were conducted in Ford County) and sought a declaration that the mortgage was a superior lien to any claim by either of the Pettits. The circuit court so held and in its judgment order specifically adjudicated that the mortgage was prior and superior to any interest of Luella Pettit, who appeals that judgment. Bentley Pettit was served with summons but took no part in the litigation.

The resolution of the case depends upon the procedural steps taken in the trial court and upon the application of the doctrine of *lis pendens*.

Plaintiff's complaint was verified; the first responsive pleading was a motion to dismiss which was later withdrawn and an answer filed on behalf of Luella Pettit. The answer was unverified and set up *lis pendens* as an affirmative defense; it also contained within the body of the document an allegation of equitable ownership in Luella Pettit. Plaintiff's response to the answer consisted of two motions. One purported to sound under section 48 of the Civil Practice Act and the other under section 45 of the Act. (Ill. Rev. Stat. 1979, ch. 110, pars. 48, 45, now Code of Civil Procedure, Ill. Rev. Stat. 1981, ch. 110, pars. 2—619, 2—615.) The trial court allowed both motions.

The section 48 motion was less than precise in that it did not specify which of the various subsections of paragraph (1) was being utilized. It alleged in substance that an owner of property is not prohibited from conveying it by virtue of a pending action provided no fraud is present. It was supported by an affidavit from Bentley Pettit's attorney that the note was given for fees and costs incurred in the dissolution litigation and that Bentley had no interest in the proceeds of the note and mortgage. We can only assume that the motion sounded under subsection (i) of paragraph (1) of section 48, which provides for "other affirmative matter avoiding the legal effect of or defeating the claim or demand." Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(i).

It is our opinion that the section 48 motion was improper and further that the trial court was in error in allowing it. In essence it questions the legal sufficiency of the defense of *lis pendens*; the fact that the note and mortgage were given for value received was not controverted; and the *lis pendens* allegation appears on the face of the answer. In such a case, section 45 is the proper motion. In the

Historical and Practice Notes to section 48 it is stated:

> "Although defects that appear on the face of the pleading attacked may, according to the letter of the section, be reached by motion under this section, [citation], the section is not actually designed for use for that purpose, except where the defect from the face of the pleading is coupled in the motion with a ground of dismissal based on matter that does not appear of record. In other words, if the only ground of a motion is a defect that appears on the face of the pleading attacked the appropriate method of reaching that defect is by motion under section 45." Ill. Ann. Stat., ch. 110, par. 48, Historical and Practice Notes, at 354 (Smith-Hurd 1968).

In addition to the impropriety of the use of section 48, the trial court's ruling on the legal question asserted was in error, and it appears that this error carried through all of the subsequent proceedings. The error was a misapprehension of the law concerning *lis pendens*, as will be elaborated later.

The section 45 motion raised essentially the same ground as the section 48 motion, but added to it a failure to verify the answer as required by section 35 of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 35, now Code of Civil Procedure, Ill. Rev. Stat. 1981, ch. 110, par. 2—605.) The court's ruling, made by docket entry, states: "Plaintiff's section 48 motion allowed with respect to Defendant's answer. The same is stricken. Defendant granted leave to file amended answer within fourteen days of this date." No fuller explanation of the ruling is contained in the record. It therefore follows that the trial court must have considered the matter of *lis pendens* to have been finally adjudicated under the section 48 motion; under those circumstances leave to plead over could have arisen only from the section 45 motion on the sole basis of failure to verify. This is borne out by the subsequent proceedings.

In due course defendant filed an amended answer, verified, and without the affirmative matter contained in the original answer. The amended answer did contain within its body the same allegation as was in the original answer, *i.e.*, equitable ownership in Luella Pettit. Plaintiff moved to strike this portion of the amended answer on the basis that the court had already ruled in favor of the plaintiff on the matter. The trial court allowed that motion.

When the case came on for trial, the proof was in large part *pro forma*. The only witness was Richard Opsahl, a member of the plaintiff law firm and attorney for Bentley Pettit. He testified as to the services performed and as to the circumstances surrounding the exe-

cution of the note and mortgage. Defendant attempted to cross-examine him concerning his knowledge of the dispute between Luella and Bentley Pettit over the property covered by the mortgage. Objection was sustained on the grounds of relevancy and defendant did not pursue the matter further. As has been indicated, judgment was rendered in favor of the plaintiff and against the defendant Luella Pettit.

Two preliminary matters require some brief discussion. It is argued that the failure of defendant to raise the *lis pendens* defense in her amended answer constituted a waiver of the point. We do not agree. Upon the allowance of the motion, even though it was erroneous, the law of the case was established, and it would be bootless to go through a process of reiteration with the same rulings as before. This becomes even more apparent when one considers the later motion striking the portion of the amended answer concerning equitable ownership. Section 48 itself makes provision for this situation: "The raising of any of the foregoing matters by motion under this Section does not preclude the raising of them subsequently by answer unless the court has disposed of the motion on its merits; ***." Ill Rev. Stat. 1979, ch. 110, par. 48(4).

It must be remembered what the exact posture of the pleadings was in this case: the section 48 dismissal was only partial, *i.e.*, of the affirmative defense; the section 45 ruling allowed the defendant to plead over; hence there was no final order, and the effect of the court's ruling on the section 48 motion was only to establish the law of the case on one point. Subparagraph (5) of Section 48 (Ill. Rev. Stat. 1979, ch. 110, par. 48(5)) provides that pleading over after denial of the motion is not a waiver of any error in that decision. It follows that the allowance of a partial dismissal only is in the same posture; otherwise, the statute would produce an order not subject to review. The ruling on the section 48 motion is properly before us.

■ The second point is the absence of any offer of proof when objection to a line of questioning of Mr. Opsahl was sustained. Ordinarily an offer of proof is required so that the trial judge, opposing counsel, and the reviewing court would know what evidence was sought to be produced, but it is not necessary when the nature of that evidence is apparent. (*Lindley v. St. Mary's Hospital* (1980), 85 Ill. App. 3d 559, 406 N.E.2d 952.) There can be no doubt as to what the evidence would have been in the case at bar. The offer was unnecessary.

We turn next to a consideration of the trial court's ruling on the section 48 motion. The parties have argued this in the context of *lis pendens*. The supreme court laid down an exhaustive interpretation of

the doctrine in *Norris v. Ile* (1894), 152 Ill. 190, 199-200, 38 N.E. 762, 764, as follows:

> "Chancelor Kent has said, that *lis pendens* is no more than an adoption of the rule in a real action at common law, where, if the defendant aliens after the pendency of the writ, the judgment in the real action will overreach such alienation. (*Murray v. Ballou,* 1 Johns. Ch. 566). It was one of the ordinances of Lord Bacon, that 'no decree bindeth any that come in *bona fide* by conveyance from the defendant before the bill exhibited, and is made no party either by bill or order; but where he comes in *pendente lite,* and while the suit is in full prosecution, and without any color or allowance or privity of the court, there the decree bindeth.' (Idem.) Whether the object of *lis pendens* be constructive notice, or to hold the subject of the suit, or *res,* within the power of the court so as to enable the court to give effect to its judgment or decree, the decision of the court will be binding not only on the litigant parties, but also on those who derive title under them by alienations made pending the suit. (2 Pom. Eq. Jur. sec. 632). The doctrine of *lis pendens* is founded upon public convenience and necessity. (*Durand v. Lord,* 115 Ill. 610). The *lis pendens* begins from the service of the summons or subpoena after the filing of the bill. (*Grant v. Bennett,* 96 Ill. 513). A purchaser from the defendant while the suit is pending acquires his interest subject to such decree as may be rendered on the hearing. If this were not the rule, parties might, by transferring their interests during the pendency of the suit, defeat its whole purpose, and make the litigation endless. A purchaser *pendente lite* from a mortgagor is, to all intents and purposes, a party to the decree of foreclosure, because the same proceedings can be had against him, which can be taken against the mortgagor. He, who purchases property during the pendency of the suit, is as conclusively bound by the result of the litigation, as if he had been a party thereto from the outset. [Citations.]"

It is thus apparent that the principle operates *in rem;* persons not parties to the litigation and not even subject to the jurisdiction of the court in the case are bound. The practical effect is to place a cloud upon the title until the litigation is resolved. Most of the cases dealing with the principle turn on the question of notice. For example, in *Davidson v. Dingeldine* (1920), 295 Ill. 367, 129 N.E. 79, an attorney was the vendor in a contract for deed and also represented the husband in a divorce proceeding; he caused all the payments theretofore

made on the contract to be credited to his fee; as a result, the contract was in default, and he then conveyed his interest to his half-sister. The divorce decree awarded the husband's interest in the property to the wife. The attorney's half-sister then brought an ejectment action against the divorced wife and claimed no knowledge of the divorce decree. The supreme court affirmed a finding in favor of the wife, holding that the suit was notice to the world that anyone taking the property *pendente lite* took subject to the equities of the parties to the litigation.

No case has been called to our attention, and we doubt that any such could be found, holding that one who has actual notice of the pendency of suit is in a better position than one who is bound by the constructive notice generated by that pendency. In the instant case nothing could be clearer than that the plaintiff had actual notice; a member of the plaintiff firm was representing Bentley Pettit, one of the parties litigant; it is axiomatic that the attorney representing a party litigant has a better notion of the pendency and progress of the suit than the client.

█ Plaintiff argues that our 1978 reversal eliminated any claim by Luella Pettit to the property and that by taking the mortgage in the interval between the remand and retrial plaintiff took free and clear of any claim by her. The argument overlooks the fact that the special equities need not be ultimately established; it is sufficient that they be asserted. It is the existence of the suit itself, not the probabilities of success, which invokes the principle of *lis pendens*. A similar claim was made in *Norris*, and the supreme court disposed of the contention as follows:

> "The description of the property may be such that, by reference and upon inquiry, it may be ascertained. It must be so pointed out in the proceedings, as to warn the public that they intermeddle at their peril; and any one reading the bill must be able to learn thereby what property is intended to be made the subject of litigation. [Citations.]" 152 Ill. 190, 202, 38 N.E. 762, 765.

Our 1978 opinion in no wise terminated any claim to special equities; it only invited the proper pleading by which to establish what had been inaptly asserted.

Plaintiff also reavows what was alleged in its section 48 motion, *i.e.*, that a spouse has the right to alienate his property without the consent of the other so long as the transfer is not colorable or illusory. As we have heretofore indicated, the argument is wide of the mark and ignores the principle of *lis pendens*. The question is not

whether he may make an alienation, but what clouds exist upon it when made. The argument is without merit.

Plaintiff's final argument concerns section 405 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 405), which provides in part:

> "Every condemnation proceeding, proceeding to sell real estate of decedent to pay debts, or other suit seeking equitable relief, affecting or involving real property shall, from the time of the filing in the office of the recorder of deeds in the county where the real estate is located of a notice signed by any party to the suit or his attorney of record or attorney in fact on his behalf, setting forth the title of the cause, the parties to it, the court where it was brought and a description of the real estate, *be constructive notice* to every person subsequently acquiring an interest in or a lien on the property affected thereby, and every such person and every person acquiring an interest or lien as aforesaid, not in possession of the property and whose interest or lien is not shown of record at the time of filing such notice, shall, for the purposes of this Act, be deemed a subsequent purchaser and shall be bound by the proceedings to the same extent and in the same manner as if he were a party therto." (Emphasis added.) Ill Rev. Stat. 1979, ch. 110, par. 405.

Defendant concedes that no such notice was ever filed. In the circumstances of this case, we believe notice was not required. The statute represents an effort to ameliorate the harsh common law rule as explicated in *Norris*. Under the common law the suit was "notice to the world." (*Davidson v. Dingeldine* (1920), 295 Ill. 367, 372, 129 N.E. 79.) In an earlier, simpler era, when the amount of litigation was not progressing exponentially, the rule was workable. Clerk's docket books were slim, and "everybody knew" what was going on in court, especially in the smaller communities. Today it requires sophisticated electronic equipment for even a court itself to track the docket.

It is to be noted that the statute applies to "constructive notice" situations, that is, situations where actual notice is lacking. It therefore applies to those who are strangers to the litigation, obviously not the case at bar. Such was the situation in *E & E Hauling, Inc. v. County of Du Page* (1979), 77 Ill. App. 3d 1017, 396 N.E.2d 1260, and *Admiral Builders Corp. v. Robert Hall Village* (1981), 101 Ill. App. 3d 132, 427 N.E.2d 1032. In *E & E Hauling* there was an attempt to bind parties nonlitigant by a *lis pendens* notice. The court held that it was an attempt at an indirect injunction and voided it. In *Admiral Builders* the plaintiff sued the defendant's predecessor in title and af-

terwards sought to join the defendant on a separate cause of action. The court held that the defendant would not be bound by the previous suit because of the failure to file a *lis pendens* notice, but that the failure was no bar to the subsequent suit. Both courts emphasized the constructive notice nature of the statute. The cases are inapposite.

The trial court was in error in allowing the section 48 motion and the error carried through in its striking a portion of the amended answer and sustaining objection to cross-examination. Its ultimate conclusion was also erroneous as a result of the prior errors. Its judgment is therefore reversed.

Nothing could be accomplished by a remandment of this cause except to enter a contrary order. Therefore, pursuant to the power vested in this court under Supreme Court Rule 366(a)(5) (91 Ill. 2d R. 366(a)(5)) we enter judgment here for the defendant Luella Pettit.

Reversed.

GREEN, P. J., and MILLS, J., concur.