JOHN HENKEL, d/b/a National Battery Brokers, Plaintiff-Appellant, v. ROBERT W. MORRIS et al., Defendants (Diana Jean Morris, Defendant-Appellee).

Third District   No. 3—86—0346

Opinion filed May 22, 1987.

BARRY, P.J., dissenting.

Karl Bredberg, of Aledo, for appellant.

Winstein, Kavensky, Wallace & Doughty, of Rock Island (Franklin Wallace, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, John Henkel, appeals from the judgment of the circuit court of Mercer County dismissing his complaint to foreclose on a mortgage and denying his post-trial motions to reconsider or for a new trial. We reverse and remand the case for a new trial.

Defendants Robert W. Morris and Diana Jean Anderson (f/k/a Diana Jean Morris) were divorced after extensive litigation. In the course of the dissolution proceedings, an order was entered on October 5, 1983, enjoining Robert from "disposing or secreting or hiding the marital assets provided, however, he shall continue to operate his business known as American Battery in the ordinary course of that business." On February 11, 1984, Robert gave a promissory note to Henkel in the amount of $15,000 secured by a mortgage on certain real estate jointly owned by himself and Diana Jean in exchange for a $15,000 line-of-credit agreement for merchandise to be provided to American Battery. Diana Jean did not sign any of the documents. Pursuant to the agreement, merchandise worth in excess of $15,000 was delivered to American Battery. Robert defaulted on the note, and Henkel sued to foreclose on the mortgage.

Prior to trial, the parties agreed to Henkel's voluntary dismissal of counts II and III of the complaint, which prayed for an accounting

and for proceeds of insurance monies paid to Robert and Diana Jean as a result of the fire destruction of the residence on the subject property. The parties proceeded to trial with the understanding that the only issue remaining was whether Henkel's mortgage lien attached to one-half of the subject property or to the whole.

At trial, Henkel testified that he knew Robert and Diana Jean were having marital difficulties at the time the mortgage and other documents were executed. Henkel did not request a title search of the property prior to recording his mortgage on February 14, 1984, but a limited title search conducted by John Moeller, his attorney at the time, revealed the pending dissolution action.

Diana Jean testified for the defense. According to her testimony, she telephoned Henkel in May of 1984 to ask how much Robert owed on his line of credit with Henkel. Henkel, after conferring with Robert, told her that Robert did not want the amount disclosed and that Robert stated it was not her concern and that she should mind her own business. Ultimately, on August 24, 1984, the property in question was awarded to Diana Jean in the dissolution action "free and clear of any interest of [Robert] subject to any valid and legal liens against said property."

At the close of the evidence, Henkel argued that the mortgage was a valid lien against the entire tract and, in accord with the property distribution order, that Diana Jean took the property subject to that lien. Diana Jean, as a joint tenant and a nonsubscriber to the mortgage, contended that she held an undivided one-half interest in the parcel free and clear of Henkel's mortgage.

The following colloquy then ensued between the court and counsel:

"THE COURT: This Court is disturbed considerably by this matter. It notes that on October 13 [sic], 1983, there was an injunction entered that neither party would with regard to marital property dispose of them [sic] or in any other way affect them or their titles. The transaction referred to was many, many, many months later and in violation of that Court Order.

This is a Court of Equity. This Court is being asked now to state that any illegal act by Mr. Morris was a legal act and created a valid lien. That's the situation we are in, is it not, Mr. Bredberg?

MR. BREDBERG [Plaintiff's counsel]: Your Honor, we are in the—My client has advanced monies or properties to Mr. Morris.

THE COURT: That was at his risk, Mr. Bredberg. This

Court is asking you whether or not you agree there was an injunction issued which prohibited Mr. Morris from acting as he did act.

BREDBERG: I read the Morris divorce file. There was an injunction, yes, that is true, Your Honor.

THE COURT: And, do you characterize the lien on behalf of the Plaintiff as a valid lien?

BREDBERG: Yes, I do, Your Honor.

THE COURT: Mr. Wallace, do you have any response to the Court's indication of the difficulty it is having with regard to the law and the assumption and apparently [*sic*] agreement that this is a valid lien?

MR. WALLACE [Diana Jean's counsel]: This is a violation of the injunction. And, in contrast to what Mr. Bredberg says, I feel that actual notice and I think the Court can find that Mr. Henkel knew that from the evidence in this case, that he knew that there was a divorce action. So, that put him on notice in going and looking in the file. And, so he would—He is charged with notice of this. And, I submit that with the violation of the injunction as the Court has indicated I think that that [*sic*] conceivably the Court could state that as this is a Court of Equity it can find that Mr. Henkel doesn't have any lien against the property, not just a half.

I am—haven't thought in terms of what the Court has indicated, but with the Court's statement there, I can see where the Court can very well find that he doesn't have any lien whatsoever, not just a half, but I previously discussed—

THE COURT: The property has gone over to the Defendant Diana Morris. The Court denies the complaint to foreclose the mortgage.

Would you prepare an Order, Mr. Wallace?

WALLACE: I am doing that now, Your Honor.

THE COURT: There has been a default against Mr. Morris. If you would prepare an Order on that, Mr. Bredberg.

BREDBERG: Your Honor, just for clarification, are you saying that you are—Chapter 30, I understand what you are saying, but I guess I am questioning just asking for a clarification in regard to Chapter 30, Section 121. Are you saying that that has no applicability and there was no need for a *lis pendens* being filed?

THE COURT: There is no pleading with regard to that other than the fact that there is a statement that Mr. Henkel

did not know about any proceedings whereas there has been testimony that he did know.

Now this Court is not ruling with regard to the *lis pendens*. I am ruling that—

BREDBERG: I will take that matter up with a rehearing then, Your Honor.

THE COURT: Thank you."

An order dismissing Henkel's complaint was entered accordingly on July 29, 1985.

In his post-trial motion, Henkel asserted: (1) that the court erred in ruling "that the mortgage of the Plaintiff was not a valid lien against the subject real estate because the mortgage given to the Plaintiff by the Defendant, ROBERT W. MORRIS, was in violation of an injunctive order entered in the Dissolution of Marriage case between DIANA MORRIS and ROBERT W. MORRIS"; and (2) that he was prepared to establish that Robert and Diana Jean had in fact reconciled their marital difficulties between October 1983 and May 1984 such that he would have had no notice that the court's injunctive order was in effect when the mortgage was given. Henkel's post-trial motion for reconsideration or for a new trial was denied pursuant to a memorandum opinion of April 14, 1986.

In this appeal, Henkel raises five issues: (1) whether the mortgage on the subject property was given in the "ordinary course of business"; (2) whether the doctrine of *lis pendens* applies to the mortgage; (3) whether the mortgage lien was on one-half of the subject property or whether it extended to the entire tract; (4) whether the trial court's order dismissing the foreclosure action was "plain error"; and (5) whether the trial judge should have granted him a new trial or allowed him to reopen his case.

We note initially that the trial court's action was based on issues not raised by the parties in their pleadings nor did either party introduce any evidence at trial concerning the validity of the mortgage. The only issue raised was whether the mortgage was on the husband's one-half interest, as contended by the wife, or on the entire parcel, as contended by the plaintiff.

After all the evidence was in, the court, to the surprise of both parties, determined that the mortgage was void as violative of the restraining order. This position was not advanced by either party, as revealed by the colloquy, yet the wife's attorney took full advantage of the trial court's surprise interjection of this issue since it favored the wife far beyond any issue asserted in the proceedings. Because this issue was not supported by the evidence or the pleadings, the attor-

ney had difficulty supporting the court's actions, although out of deference to the bench, he could not do otherwise since such unsought blessings seldom arise and obviously cannot be refused.

■ Section 501 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 501(a)(2)(i)) provides for the type of restraining order regarding the marital property as the court entered in this case. This section also provides an exception which permits certain dispositions of property made in the ordinary course of business. Once such an order is entered, a violation of that order is generally enforceable by punishing the person whose actions are restricted, *i.e.*, contempt. (*People v. Gholson* (1952), 412 Ill. 294, 106 N.E.2d 333.) But mere absence of compliance is not a sufficient basis for a judgment of contempt. The evidence must show that the failure to comply was a willful and contumacious refusal to obey the court order. (*Cole v. Cole* (1967), 85 Ill. App. 2d 105, 229 N.E.2d 293.) Both the order and the evidence in this case show that the proceeds of the mortgage were used in the husband's business. This would inferentially dispute any claim of violation or noncompliance if any of the parties involved had asserted this issue.

■ Further, a person not a party to the action when the order was entered and who was not mentioned in the order, *e.g.*, the plaintiff in this case, could not be adjudged in contempt for a failure to comply. (*City of Chicago v. Chatham Bank* (1964), 54 Ill. App. 2d 405, 203 N.E.2d 788.) The exception to this rule is where the other party could be shown to have acted in concert with the person restricted with the intent to circumvent the order. (See *People v. Kennedy* (1963), 43 Ill. App. 2d 299, 193 N.E.2d 464.) To be liable for such a violation, the law requires knowledge and intent. (*People ex rel. Chicago Bar Association v. Novotny* (1944), 386 Ill. 536, 54 N.E.2d 536.) Since there was no pleading seeking enforcement of the restraining order, no contempt was sought, although the trial court's determination could be construed as a contempt action. There was no evidence of willful conduct by the plaintiff, and we fail to see how the lien in this case could be deemed invalid to the detriment of the plaintiff, who had no knowledge or notice of any court order and where no *lis pendens* had been filed.

■ The trial court erred when it held that the attempted lien on the property was invalid and that there was no need to discuss whether plaintiff's mortgage attached to the whole parcel or to one-half. We have been unable to locate a single case indicating that a violation of the temporary restraining order in and of itself results in a void transaction when a transfer has taken place. (See *In re Marriage*

*of Shehade* (1985), 137 Ill. App. 3d 692, 484 N.E.2d 1253 (finding of collusive transfer needed to declare assignment void and of no legal effect).) One case which deserves comment is *Allen & Korkowski & Associates v. Pettit* (1982), 108 Ill. App. 3d 384, 439 N.E.2d 102, which appears to support the proposition that constructive notice, supplied by the filing of a *lis pendens,* or actual notice would necessarily subordinate any interest Henkel might have had by virtue of the mortgage instrument to that of Diana Jean Morris. While we have no doubt that that is a correct statement of the law, the facts in *Korkowski,* in contrast to the facts of this case, are easily distinguishable. The only logical conclusion, therefore, is that *Korkowski's* holding is likewise inapplicable.

In *Korkowski,* the attorney had taken a mortgage on the husband's property for his representation of the husband in the marriage dissolution matter. Prior to that proceeding, the husband and wife had been involved in continuous litigation regarding their dissolution and property settlement. The husband executed the mortgage in the interval between remand of the prior proceedings and the retrial. The court held that the principle of *lis pendens* was applicable and that the reversal had not eliminated the wife's claim to the mortgaged property. The attorney had actual notice, by being involved in the actual proceedings, of the cloud on the title to the mortgaged property. Nothing was clearer than that the plaintiff had actual notice since a member of the plaintiff firm was representing one of the parties litigant.

This case represents a substantially different matter. No *lis pendens* was ever filed in this matter. The defendant relies on a statement by the plaintiff that he knew the couple was having marital difficulties as a basis for the assertion that he had actual knowledge of the pending dissolution action. We assume this leads to the conclusion that Henkel, having actual notice of the proceedings, should have sought out the dissolution file and discovered the order restricting the use of the marital property. However, knowledge of marital discord is not the same as actual notice of a pending marriage dissolution proceeding. We hold that Henkel had no knowledge, constructive or actual, of the pending dissolution proceeding.

It also appears that notice may work to estop the defendant from asserting her claim. No claim is made that the mortgage was unknown to her. Therefore, prior to the property settlement, she either knew or should have known of the mortgage on her husband's one-half interest in the property. Whether a contested or agreed-upon property distribution, if she was aware of the lien, she would accept

the property subject to it and could not wait to contest it at a later date. However, because the trial court rendered its judgment neither on the issues raised by the pleadings nor on evidence introduced by the parties, it is difficult to determine whether this issue would have been considered in due course with the *lis pendens* aspect of the case.

On the basis of this determination, we find it unnecessary to address the other issues which Henkel raises on appeal and remand this case for further proceedings.

For the foregoing reasons, the judgment of the circuit court of Mercer County is reversed and the case is remanded for further proceedings consistent with those issues presented by the pleadings.

Reversed and remanded.

WOMBACHER, J., concurs.

PRESIDING JUSTICE BARRY, dissenting:

I cannot subscribe to what I view as my colleagues' result-oriented discussion for several reasons. In the first instance, this is not a contempt proceeding. It is an equitable action for foreclosure of a mortgage brought by a business associate of Robert Morris against marital property awarded to Diana Jean Morris Anderson. It was plaintiff's burden to prove by a preponderance of the evidence his right to the relief sought. Where, as here, a mortgage is given to secure future indebtedness, it is plaintiff's burden to prove that such mortgage was given in good faith. (See 59 C.J.S. *Mortgages* sec. 176 (1949).) The trial court found as a matter of fact that plaintiff's evidence fell short on the threshold issue of the validity of plaintiff's lien. On appeal, plaintiff, as appellant, must bear a further burden of presenting a record to establish that the trial court's factual determination was contrary to the manifest weight of the evidence. In my opinion, the record before us does not support the conclusions reached by the majority.

The record discloses that Robert Morris, at the time of the trial of this cause, was incarcerated in a Federal correctional institution for passing counterfeit currency. Whether the mortgage at issue was given in the ordinary course of Morris' business was not a question presented for the court's consideration at trial. Obviously, Morris neither appeared nor testified.

Henkel's testimony, to which the majority apparently accords substantial credence, was the only evidence adduced at trial relative to this issue and was equivocal, at best. According to Henkel, after he received Robert's mortgage securing a line of credit agreement, he

gave Robert a "large inventory of batteries." His testimony on direct examination then proceeded as follows:

"Q. And, it was fifteen thousand dollars worth of batteries?

A. It was far greater than that.

Q. And, at this time, have you been paid anything on this note?

A. Not from Robert Morris.

Q. But, you have not received any reduction on the fifteen thousand dollars principal of this note, is that correct?

A. Not really."

The common law record in the dissolution case discloses that the validity of the lien was there contested by Diana Jean on the ground that it was given in violation of the injunctive order. In that case, Robert did not deny that the mortgage violated the order. He asserted only that he had encountered "repeated cash crises for his business" and that he believed he could transfer Henkel's claim to other assets awarded to him in the property disposition of that suit.

The mere fact that the line of credit agreement was given to plaintiff for an inventory of batteries does not thereby establish that the mortgage on the marital property was validly given in the "ordinary course of [Robert's] business." The trial court, sitting in equity, was not required to ignore the underlying question of the validity of plaintiff's lien simply because the parties agreed to go to trial solely on the issue of the extent of the lien. Clearly, plaintiff, as mortgagee, could have no greater interest in the property than that of Robert Morris, the mortgagor. (*Miles Homes Inc. v. Lyons* (1972), 8 Ill. App. 3d 179, 289 N.E.2d 469.) Robert's attempt to encumber the marital property without Diana Jean's approval during the pendency of the dissolution suit, and while the injunctive order was in effect, was certainly of questionable validity, at best. It is apparent to me that the trial court determined the question of the validity of the mortgage on the basis of the record before it, giving judicial notice to the record in the dissolution of marriage case. Having reviewed both records, I cannot say that the trial court's determination was contrary to the manifest weight of the evidence.

Secondly, the majority "holds" that Henkel had no knowledge, constructive or actual, of the pending dissolution proceeding. The trial court, without specifically entering a finding on the matter, observed that "there is a statement that Mr. Henkel did not know about any proceedings whereas there has been testimony that he did know." At best, the record contains conflicting evidence, which requires that weight be assigned to the testimony, depending on the credibility of

the witnesses. Contrary to the factual recitation provided in the majority opinion, the record discloses that Diana Jean testified that she made two telephone calls to Henkel in May of 1984. During the first conversation, Henkel told Diana that he would not tell her how much Robert owed without getting Robert's approval *because he (Henkel) knew that Robert and Diana were getting a divorce.* When Diana called the second time, Henkel informed her that he had talked to Robert and that Robert had said not to tell her the amount owed—she should just stay out of it.

Further, Henkel, during cross-examination on the question, refused to give a direct answer concerning his knowledge of the pending litigation between Robert and Diana. The record on appeal contains the following:

"Q. You knew that Mr. Morris was involved in divorce litigation, isn't that correct?

A. Not really.

\*\*\*

Q. You knew there was divorce litigation?

A. It was on again, off again.

\*\*\*

Q. Okay. But you did know that there was divorce litigation going on?

A. It seems like everybody is today."

Where, as here, the record contains contradictory testimony on an issue of material fact, it is not generally within the proper purview of this court to resolve such questions so as to reach a result contrary to the judgment appealed from.

In my opinion, the trial court's determination that plaintiff's attempted lien was invalid is supported by evidence of record that Henkel had actual knowledge of the divorce litigation. (See *Allen & Korkowski & Associates v. Pettit* (1982), 108 Ill. App. 3d 384, 439 N.E.2d 102.) I do not believe that the court abused its discretion in passing on the question of the validity of the attempted mortgage before reaching the question of the extent, if any, of the lien created thereby. Since, as indicated above, I do not find manifestly erroneous the trial court's conclusion that Robert's conduct in giving the mortgage violated the injunctive order, and that Henkel knew of the Morris' pending dissolution of marriage proceedings when the mortgage was given, I find no basis for holding that the court erred in dismissing the foreclosure action without reaching the sole issue presented for its consideration at trial.

I would affirm the judgment of the circuit court of Mercer County.