FIRST MIDWEST, a Division of Jacksonville Savings Bank, f/k/a Jacksonville Savings and Loan Association, Plaintiff-Appellant, v. MARIANN POGGE, Bankruptcy Trustee for Patricia L. Cox, Defendant-Appellee (James L. Cox *et al.*, Defendants).

Fourth District No. 4—97—0393

Argued October 22, 1997.—Opinion filed December 8, 1997.

Alan W. Applebee (argued), of Jacksonville, for appellant.

James R. Enlow (argued), of Scott & Scott, P.C., of Springfield, for appellee.

JUSTICE COOK delivered the opinion of the court:

In May 1988, Patricia Cox filed an action seeking the dissolution of her marriage to James Cox. They jointly owned a home located in Virden, Illinois, which was subject to a first mortgage held by the Illini Bank of Auburn. The couple also had taken out three loans from First Midwest, a division of Jacksonville Savings and Loan Association (First Midwest), and James Cox had taken out two individual loans from First Midwest. .

By July 1989, three of the Coxes' loans with First Midwest were past maturity and in default, including the two individual loans to James Cox. In an effort to refinance and consolidate these overdue loans, First Midwest made another individual loan to James Cox in the principal sum of $8,356.07 on July 15, 1989. No new money was advanced. This loan was secured by a second mortgage on James Cox's undivided one-half interest in the real estate in Virden, Illinois. Due to the pending marriage dissolution action, Patricia Cox denied First Midwest's request to sign the note or mortgage but was aware that James had done so.

First Midwest was aware of the Coxes' pending divorce at the time of the July 15 loan and mortgage. James Cox told Gloria Leskovisek, First Midwest's vice-president, about the pending divorce a couple of months before the July 15 loan was made, while discussing possible restructuring financing options. Patricia Cox also told Leskovisek about the pending action in a telephone conversation on June 17, 1989. Patricia Cox told Leskovisek there was a pending marriage dissolution action and that she would not sign any new mortgages to consolidate or reduce payments on any existing loans.

The Coxes' marriage was dissolved on December 29, 1989, on a bifurcated basis. The property division in the marriage dissolution action was announced on July 18, 1990, by the Sangamon County circuit court. The court awarded the real estate in Virden, Illinois, to Patricia Cox and ordered James Cox to assume the indebtedness related to that property, including the July 15 loan by First Midwest.

Pursuant to the judgment, James Cox conveyed his interest in the property to Patricia Cox by quitclaim deed.

The present foreclosure action on the home in Virden, Illinois, was initiated by plaintiff First Midwest on April 20, 1990, two months prior to the entry of the order awarding the property. On August 28, 1991, the trial court entered an order in this action to sell the subject real estate. The sale (to a third party) was completed on August 30, 1991, for the sum of $57,000. After payment of the first mortgage lien to Illini Bank of Auburn in the sum of $32,458.69, there were remaining sale proceeds of $24,541.31. From that amount, $12,000 was paid over to First Midwest "in escrow" to cover the subject loan, subject to the order of the court in this action.

On November 13, 1991, James Cox filed for bankruptcy and obtained a discharge of debtor on June 15, 1992. The discharge relieved him of several debts owed to First Midwest, including the July 15 loan. Patricia Cox then filed for bankruptcy on May 7, 1992, relieving her of several debts owed to First Midwest. On October 18, 1996, the trustee of Patricia Cox's bankruptcy estate, Mariann Pogge, was substituted as defendant in this foreclosure action.

First Midwest and defendant filed cross-motions for summary judgment to recover the $12,000 in escrow. Defendant claims that First Midwest's actual notice of the Coxes' pending divorce at the time of the July 15 loan made First Midwest's rights under the mortgage subject to the divorce settlement, in accordance with the equitable doctrine of *lis pendens*. Defendant argued that when James Cox's rights to the property were divested under the divorce settlement, First Midwest's were divested as well. First Midwest countered that the doctrine of *lis pendens* did not apply. First Midwest also argued that Patricia Cox was estopped from contesting the second mortgage because she should have litigated it in the dissolution of marriage proceedings. The trial court entered summary judgment in favor of the trustee. We reverse and remand.

■ Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bass v. Prime Cable of Chicago, Inc.*, 284 Ill. App. 3d 116, 121, 674 N.E.2d 43, 47 (1996). On appeal from an order granting summary judgment, the standard of review is *de novo. USG Corp. v. Sterling Plumbing Group, Inc.*, 247 Ill. App. 3d 316, 318, 617 N.E.2d 69, 70 (1993).

■ Generally, a spouse has an absolute right to alienate his or her property, including the mortgage of his undivided one-half interest in jointly held property. *Cadle Co. II, Inc. v. Stauffenberg*, 221 Ill. App. 3d 267, 269, 581 N.E.2d 882, 884 (1991). In the usual case, the

mortgagee may then foreclose and recover such one-half interest in the case of default. *Cadle Co. II, Inc.*, 221 Ill. App. 3d at 270, 581 N.E.2d at 885. However, if the subject property was involved in a pending action at the time of the mortgage, the mortgagee's rights to that property may be limited by the doctrine of *lis pendens*. 735 ILCS 5/2—1901 (West 1992).

 At common law, the equitable remedy of *lis pendens* bound purchasers or encumbrancers of property to the results of pending lawsuits that affected the title to or lien on that property. *Norris v. Ile*, 152 Ill. 190, 199-200, 38 N.E. 762, 764 (1894). A *lis pendens* is not an injunction as it does not formally restrain sale, conveyance, or purchase. *E&E Hauling, Inc. v. County of Du Page*, 77 Ill. App. 3d 1017, 1025, 396 N.E.2d 1260, 1266 (1979). Under the doctrine of *lis pendens*, one who obtains an interest in property during the pendency of a suit affecting it is bound to the result of that litigation as if he had been a party from the outset. *E&E Hauling*, 77 Ill. App. 3d at 1023, 396 N.E.2d at 1265. For the doctrine to be applicable, three requirements must be satisfied: (1) the property must be of such a character as to be subject to the rule, (2) the court must have jurisdiction both "of the person and of the res," and (3) the property involved must be sufficiently described in the pleadings. 3 R. Michael, Illinois Practice § 21.1 (1989) (Civil Procedure Before Trial). One purpose of *lis pendens* is the avoidance of endless litigation of property rights precipitated by transfers of interest and the necessity of then filing a new suit against the transferee. *Admiral Builders Corp. v. Robert Hall Village*, 101 Ill. App. 3d 132, 136, 427 N.E.2d 1032, 1036 (1981). At common law, the mere existence of the pending action provided "notice to the world," and the subsequent purchaser was bound by the findings of that suit as if he were a party, regardless of actual or constructive notice. *Davidson v. Dingeldine*, 295 Ill. 367, 372, 129 N.E. 79, 81 (1920).

 The legislature has codified the doctrine of *lis pendens* in an attempt to ameliorate the harsh effects of the doctrine upon innocent subsequent purchasers. *Allen & Korkowski & Associates v. Pettit*, 108 Ill. App. 3d 384, 391, 439 N.E.2d 102, 107-08 (1982); see 735 ILCS 5/2—1901 through 2—1903 (West 1992). Under the statute, subsequent purchasers or encumbrancers of interests in real property are not bound by the results of pending suits unless they have "constructive notice" of the pending proceedings. 735 ILCS 5/2—1901 (West 1992). Before there may be "constructive notice," a *lis pendens* notice must be filed in the recorder's office. 735 ILCS 5/2—1901 (West 1992).

The statute, however, deals only with constructive notice. Parties with *actual notice* of pending proceedings affecting the property are

also subject to the *lis pendens* doctrine even if there has been no compliance with section 2—1901 of the Code of Civil Procedure. *Allen & Korkowski & Associates*, 108 Ill. App. 3d at 391, 439 N.E.2d at 108; *Henkel v. Morris*, 155 Ill. App. 3d 816, 822, 508 N.E.2d 780, 783 (1987). In *Allen & Korkowski & Associates*, the parties were involved in a dissolution of marriage action. The trial court awarded certain real estate to the wife and the husband appealed. After the appeal, during the interval between the remand and the retrial, the husband's attorney took a mortgage from the husband to secure payment of his legal fees. The court held that the attorney's claim to the property was inferior to the wife's even though no *lis pendens* notice had been filed, because the attorney had actual notice of the divorce proceeding. *Allen & Korkowski & Associates*, 108 Ill. App. 3d at 391, 439 N.E.2d at 108. The doctrine of *lis pendens* is meant to protect *innocent* subsequent purchasers. It would be inconsistent to bind those with constructive notice of the pending action but not those with actual notice. *Allen & Korkowski & Associates*, 108 Ill. App. 3d at 390, 439 N.E.2d at 107.

First Midwest acknowledges it had actual notice of the Coxes' pending marriage dissolution. However, it claims that *lis pendens* does not apply to pending divorce actions. At common law, *lis pendens* was limited to pending *in rem* actions and did not apply to divorce actions, unless the wife's complaint asserted a specific right to the described property or the husband had been enjoined from disposing of the property. *American Woolen Co. v. Lesher*, 267 Ill. 11, 19, 107 N.E. 882, 884 (1915); *Davidson*, 295 Ill. at 372, 129 N.E. at 81; 51 Am. Jur. 2d *Lis Pendens* § 21 (1970).

■ Today, however, *lis pendens* may apply to *any* proceeding, including divorces. 735 ILCS 5/2—1901 (West 1992). The old common law "specific right" requirement on the doctrine of *lis pendens* in divorces was meant to protect *bona fide* purchasers, who could not be expected to have notice that their property rights were in peril unless the wife's divorce complaint specifically asserted a right to the property. *American Woolen Co.*, 267 Ill. at 19, 107 N.E. at 884. That rule has been replaced by the *lis pendens* statute and has no application where the mortgagee has constructive notice. Since the adoption of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 through 802 (West 1992)) in 1977, real property, even property titled in the name of one spouse, can be marital property which is awarded to the other spouse.

First Midwest also disputes that actual notice gives rise to the doctrine of *lis pendens*. It claims that the case of *Allen & Korkowski & Associates* is limited to its facts and distinguishable from the pres-

ent case. First Midwest contends the holding in *Allen & Korkowski & Associates* is limited to the situation where a mortgage is taken after a judgment has already been entered in a pending divorce, and is now on appeal. *Allen & Korkowski & Associates*, 108 Ill. App. 3d 384, 439 N.E.2d 102. First Midwest notes that its mortgage was taken well before the Coxes' divorce judgment. First Midwest reasons that it could not have known a year in advance the property would eventually be awarded to Patricia Cox.

However, *Allen & Korkowski & Associates* does not indicate that its holding is limited to cases where the mortgage was taken after the divorce judgment. It simply holds that subsequent parties with actual notice of *pending* proceedings affecting their rights to that property are bound by those proceedings to the same extent as if they had constructive notice under section 2—1901. *Allen & Korkowski & Associates*, 108 Ill. App. 3d at 391, 439 N.E.2d at 108. As the court in *Allen & Korkowski & Associates* noted, "[i]t is the existence of the suit itself, not the probabilities of success, which invokes the principle of *lis pendens*." *Allen & Korkowski & Associates*, 108 Ill. App. 3d at 390, 439 N.E.2d at 107.

■ Another possible argument against the application of *lis pendens* in divorces is that it is an unconstitutional restraint on alienation of property, along the lines of *Messenger v. Edgar*, 157 Ill. 2d 162, 177, 623 N.E.2d 310, 317 (1993). In that case, the supreme court struck down a 1993 amendment to section 501.1 of the Act, which provided that upon the service of summons a "dissolution action stay" would automatically be in effect restraining both parties from transferring or encumbering any property without the consent of the other party or an order of the court. 750 ILCS 5/501.1 (West 1992). The supreme court held that the statute was overbroad and not rational because it restrained the parties from the disposition not only of marital assets but also nonmarital assets to which the other spouse could lay no claim. *Messenger*, 157 Ill. 2d at 177, 623 N.E.2d at 317. It could be argued the *lis pendens* doctrine suffers from the same defect, but we reject that argument. *Lis pendens* does not prevent transfers or encumbrances of property during the pendency of a dissolution action, it serves only to bind one who obtains an interest in the property during the pendency of the dissolution action as if he had been a party from the outset. A dissolution action cannot bind nonmarital property, which is property "to which the other spouse can lay no claim." *Messenger*, 157 Ill. 2d at 177, 623 N.E.2d at 317.

Finally, First Midwest contends that Patricia Cox is estopped from contesting the mortgage given by her ex-husband because she could have contested it in the marriage dissolution action. First

Midwest cites *Henkel* (155 Ill. App. 3d 816, 508 N.E.2d 780). In that case, a husband mortgaged his half of jointly owned property during the pendency of a divorce. The court held the lender was not bound by *lis pendens* because it had only knowledge of marital discord, not of a pending marriage dissolution action. *Henkel*, 155 Ill. App. 3d at 822, 508 N.E.2d at 784. The court further noted in *dicta* that the wife knew about the lien at the time of the divorce proceedings and, therefore, had accepted the property subject to the lien and could not contest it later. *Henkel*, 155 Ill. App. 3d at 822-23, 508 N.E.2d at 784. In the present case, First Midwest argues the trustee is similarly estopped because Patricia Cox knew of the mortgage at the divorce action and did not contest it.

■ Equitable estoppel applies when a person, by his statements or conduct, induces a second person to rely, to his detriment, on statements or conduct of the first person. *In re Marriage of Webber*, 191 Ill. App. 3d 327, 331, 547 N.E.2d 749, 751 (1989). Equitable estoppel does not apply in this case. First Midwest could not have been induced to its detriment by Patricia's statements or conduct because it made the subject loans over a year before the foreclosure and dissolution actions. Patricia Cox's statements at the time of the mortgage served as a warning to First Midwest not to rely on the mortgage. Patricia Cox specifically told First Midwest that a divorce was pending and she would not sign the July 15 loan or increase her obligations to the bank. Nor does Patricia Cox's failure to contest the mortgage during the marriage dissolution action give rise to estoppel. At that point, First Midwest had already filed the foreclosure action and was litigating the mortgage, so its conduct could not have been affected by Patricia Cox's actions.

■ We believe the doctrine of *lis pendens* applies. In accordance with *Allen & Korkowski & Associates*, First Midwest had actual notice of the Coxes' pending divorce and was not a *bona fide* purchaser. *Allen & Korkowski & Associates*, 108 Ill. App. 3d at 391, 439 N.E.2d at 108. Therefore, it was bound to the judgment rendered in the underlying Cox dissolution action as if it had been a party to that action.

However, we do not believe First Midwest's rights to the property were adversely affected by the judgment rendered in the dissolution action. In *Henkel*, the dissolution judgment awarded the property to Diana Jean " 'free and clear of any interest of [Robert] subject to any valid and legal liens against said property.' " *Henkel*, 155 Ill. App. 3d at 818, 508 N.E.2d at 781. Diana Jean then attempted to show that the mortgage was not valid because it violated a temporary restraining order enjoining Robert from disposing of or secreting or hiding

the marital assets. There was no such temporary restraining order in this case, and defendant here makes a different argument: that because of the doctrine of *lis pendens*, First Midwest was in effect a party to the dissolution of marriage litigation and took subject to any order eventually entered in that litigation.

If the judgment of dissolution had awarded the Virden residence to James, the rights of First Midwest would not have been affected by the judgment. If the judgment of dissolution had awarded the Virden residence to Patricia, subject to the lien of First Midwest, again First Midwest's rights would not have been affected. The judgment of dissolution in fact provided that the "parties incurred certain debts," including a promissory note to First Midwest in the amount of $8,000, "secured by a second mortgage upon the home located at 18 Perry Drive, Virden, Illinois." It also awarded the home at 18 Perry Drive, Virden, Illinois, to Patricia. We read the judgment of dissolution as recognizing the mortgage and awarding the Virden residence subject to that mortgage. By virtue of the doctrine of *lis pendens*, First Midwest took the mortgage subject to any order eventually entered in the dissolution of marriage action, but no order entered in that action interfered with the rights of First Midwest.

We reverse and remand for the trial court to enter summary judgment in favor of First Midwest.

Reversed and remanded.

McCULLOUGH, P.J., and KNECHT, J., concur.