NO. 4-97-0393

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FIRST MIDWEST, a Division of ) Appeal from

JACKSONVILLE SAVINGS BANK, f/k/a ) Circuit Court of

JACKSONVILLE SAVINGS AND LOAN ) Sangamon County

ASSOCIATION, a Corporation, ) No. 90CH62

Plaintiff-Appellant, )

v. )

MARIANN POGGE, Bankruptcy Trustee )

for Patricia L. Cox, )

Defendant-Appellee, )

and )

JAMES L. COX, ILLINI BANK OF AUBURN, a )

Corporation, CREDITTHRIFT OF AMERICA )

INC., a Corporation, LESTER L. ROYER, )

GRACE I. ROYER, UNKNOWN OWNERS and ) Honorable

NON-RECORD CLAIMANTS, ) Robert J. Eggers,

Defendants. ) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

In May 1988, Patricia Cox filed an action seeking the dissolution of her marriage to James Cox.  They jointly owned a home located in Virden, Illi­nois, which was subject to a first mort­gage held by the Illini Bank of Auburn.  The couple also had taken out three loans from First Midwest, a division of Jackson­ville Savings and Loan Association (First Midwest), and James Cox had taken out two individual loans from First Midwest.

By July 1989, three of the Coxes' loans with First Midwest were past maturity and in default, including the two individual loans to James Cox.  In an effort to refinance and consolidate these overdue loans, First Midwest made another individual loan to James Cox in the principal sum of $8,356.07

on July 15, 1989.  No new money was advanced.  This loan was secured by a second mortgage on James Cox's undi­vided one-half interest in the real estate in Virden, Illinois.   Due to the pending mar­riage dissolution action, Patricia Cox denied First Midwest's request to sign the note or mortgage but was aware that James had done so.

First Midwest was aware of the Coxes' pending divorce at the time of the July 15 loan and mortgage.  James Cox told Gloria Leskovisek, First Midwest's vice-president, about the pending divorce a couple of months before the July 15 loan was made, while dis­cuss­ing possible restructuring financing op­tions.  Patricia Cox also told Leskovisek about the pending action in a telephone conversa­tion on June 17, 1989.  Patri­cia Cox told Leskovisek there was a pending mar­riage disso­lution action and that she would not sign any new mortgages to consoli­date or reduce pay­ments on any existing loans.  

The Coxes' marriage was dissolved on Decem­ber 29, 1989, on a bifurcated basis.  The property division in the marriage disso­lution action was announced on July 18, 1990, by the Sangamon County circuit court.  The court awarded the real estate in Virden, Illinois, to Patricia Cox and ordered James Cox to assume the indebtedness related to that property, includ­ing the July 15 loan by First Midwest.  Pursuant to the judgment, James Cox conveyed his interest in the property to Patricia Cox by quitclaim deed.

The present foreclosure action on the home in Virden, Illinois, was initiated by plaintiff First Midwest on April 20, 1990, two months prior to the entry of the order awarding the proper­ty.  On August 28, 1991, the trial court entered an order in this action to sell the subject real estate.  The sale (to a third party) was com­plet­ed on August 30, 1991, for the sum of $57,000.  After payment of the first mortgage lien to Illini Bank of Auburn in the sum of $32,458.69, there were remaining sale proceeds of $24,541.31.  From that amount, $12,000 was paid over to First Midwest "in escrow" to cover the subject loan, subject to the order of the court in this action.

On November 13, 1991, James Cox filed for bankruptcy and obtained a discharge of debtor on June 15, 1992.  The dis­charge relieved him of several debts owed to First Midwest, includ­ing the July 15 loan.  Patricia Cox then filed for bank­ruptcy on May 7, 1992, relieving her of several debts owed to First Mid­west.  On October 18, 1996, the trustee of Patricia Cox's bank­ruptcy estate, Marianne Pogge, was substituted as defendant in this foreclosure action.

First Midwest and defendant filed cross-motions for summary judg­ment to recover the $12,000 in escrow.  Defendant claims that First Midwest's actual notice of the Coxes' pending divorce at the time of the July 15 loan made First Midwest's rights under the mortgage subject to the divorce settlement, in accor­dance with the equita­ble doctrine of 
lis
 
pendens
.  Defendant argued that when James Cox's rights to the proper­ty were divest­ed under the divorce settle­ment, First Midwest's were divested as well.  First Midwest coun­tered that the doc­trine of 
lis
 
pendens
 did not apply.  First Midwest also argued that Patricia Cox was es­topped from contesting the second mortgage because she should have litigated it in the dissolution of marriage proceed­ings.  The trial court entered summary judgment in favor of the trustee. We reverse and remand.

Summary judgment should be granted if there is no genuine issue of material fact and the moving party is enti­tled to judgment as a matter of law.  
Bass v. Prime Cable of Chicago, Inc.
, 284 Ill. App. 3d 116, 121, 674 N.E.2d 43, 47 (1996).  On appeal from an order granting summary judgment, the standard of review is 
de
 
novo
.  
USG Corp. v. Sterling Plumbing Group, Inc.
, 247 Ill. App. 3d 316, 318, 617 N.E.2d 69, 70 (1993).

Generally, a spouse has an absolute right to alienate his or her property, including the mortgage of his undivided one-half interest in jointly held property.  
Cadle Company II, Inc. v. Stauffenberg
, 221 Ill. App. 3d 267, 269, 581 N.E.2d 882, 884 (1991).  In the usual case, the mortgagor may then foreclose and recover such one-half interest in the case of default.  
Cadle Company II, Inc.
, 221 Ill. App. 3d at 270, 581 N.E.2d at 885.   Howev­er, if the subject property was involved in a pending action at the time of the mortgage, the mortgagee's rights to that property may be limited by the doc­trine of 
lis
 
pendens
. 735 ILCS 5/2-1901 (West 1992). 

At common law, the equitable remedy of 
lis
 
pendens
 bound purchasers or encumbrancers of property to the results of  pending lawsuits that affected the title to or lien on that property.  
Norris v. Ile
, 152 Ill. 190, 199-200, 38 N.E. 762, 764 (1894).  A 
lis
 
pendens
 is not an injunction as it does not formally restrain sale, conveyance, or purchase.  
E&E Hauling, Inc. v. County of DuPage
, 77 Ill. App. 3d 1017, 1025, 396 N.E.2d 1260, 1266 (1979).  Under the doctrine of 
lis
 
pendens
, one who obtains an interest in property during the pendency of a suit affecting it is bound to the result of that litigation as if he had been a party from the outset.  
E&E Hauling
, 77 Ill. App. 3d at 1023, 396 N.E.2d at 1265.  For the doctrine to be applicable, three requirements must be satisfied:  (1) the property must be of such a character as to be subject to the rule, (2) the court
 must have jurisdiction both "of the person and of the res," and (3) the property involved must be sufficiently described in the pleadings.  3 R. Michael, Illinois Practice §21.1 (1989) (Civil Proce­dure Before Trial).  One purpose of 
lis
 
pendens
 is the avoid­ance of endless litiga­tion of property rights precip­i­tated by trans­fers of interest and the necessity of then filing a new suit against the transferee.  
Admiral Build­ers Corp. v. Robert Hall Vil­lage
, 101 Ill. App. 3d 132, 136, 427 N.E.2d 1032, 1036 (1981).  At common law, the mere existence of the pending action provided "notice to the world," and the subsequent pur­chaser was bound by the find­ings of that suit as if he were a party, regard­less of actual or con­struc­tive notice.  
Davidson v. Dingeldine
, 295 Ill. 367, 372, 129 N.E. 79, 81 (1920).        

The legislature has codified the doctrine of 
lis
 
pendens
 in an attempt to ameliorate the harsh effects of the doctrine upon innocent subsequent purchasers.  
Allen & Korkowski & Associates v. Pettit
, 108 Ill. App. 3d 384, 391, 439 N.E.2d 102, 107-08 (1982); see 735 ILCS 5/2-1901 through 2-1903 (West 1992).  Under the stat­ute, subse­quent pur­chas­ers or encumbrancers of interests in real property are not bound by the results of pending suits unless they have "con­structive notice" of the pending pro­ceed­ings.  735 ILCS 5/2-1901 (West 1992).  Before there may be "con­struc­tive notice," a 
lis
 
pendens
 notice must be filed in the recorder's office.  735 ILCS 5/2-1901 (West 1992).  

The statute, however, deals only with constructive notice.  Parties with 
actual
 
notice
 of pending pro­ceed­ings affect­ing the property are also subject to the 
lis
 
pendens
 doctrine even if there has been no compliance with section 2-1901 of the Code of Civil Procedure.  
Allen & Korkowski & Associ­ates
, 108 Ill. App. 3d at 391, 439 N.E.2d at 108; 
Henkel v. Morris
, 155 Ill. App. 3d 816, 822, 508 N.E.2d 780, 783 (1987).  In 
Allen & Korkowski & Associ­ates
, the parties were involved in a  dissolu­tion of mar­riage action.  The trial court awarded certain real estate to the wife and the husband appealed.  After the appeal, during the interval between the remand and the retrial, the husband's attor­ney took a mort­gage from the husband to secure payment of his legal fees.  The court held that the attorney's claim to the property was inferior to the wife's even though no 
lis
 
pendens
 notice had been filed, because the attorney had actual notice of the divorce proceeding.  
Allen & Korkowski & Associ­ates
, 108 Ill. App. 3d at 391, 439 N.E.2d at 108.  The doctrine of 
lis
 
pendens
 is meant to protect 
innocent
 subsequent purchas­ers.
  It would be inconsis­tent to bind those with con­struc­tive notice of the pending action but not those with actual notice.  
Allen & Korkowski & Associ­ates
, 108 Ill. App. 3d at 390, 439 N.E.2d at 107.

First Midwest acknowledges it had actual notice of the Coxes' pending marriage dissolution.  However, it claims that 
lis
 
pendens
 does not apply to pending divorce actions.  At common law, 
lis
 
pendens
 was limited to pending 
in
 
rem
 actions and did not apply to divorce actions
, unless the wife's complaint assert­ed a specific right to the described property or the husband had been enjoined from disposing of the property.  
American Woolen Co. v. Lesher
, 267 Ill. 11, 19, 107 N.E. 882, 884 (1915); 
David-son
, 295 Ill. at 372, 129 N.E. at 81; 51 Am. Jur. 2d 
Lis
 
Pendens
 §21 (1970).  

Today, however, 
lis
 
pendens
 may apply to 
any
 proceed­ing, includ­ing divorces.  735 ILCS 5/2-1901 (West 1992).  The old common law "specific right" requirement on the doctrine of 
lis
 
pendens
 in divorc­es was meant to protect 
bona
 
fide
 purchas­ers, who could not be expected to have notice that their property rights were in peril unless the wife's divorce complaint specifi­cally asserted a right to the property.  
Ameri­can Woolen Co.
, 267 Ill. at 19, 107 N.E. at 884.  That rule has been re­placed by the  
lis
 
pendens
 statute and has no applica­tion where the mortgagee has con­struc­tive notice
.  Since the adoption of the Illinois Marriage and Disso­lution of Marriage Act (Act) (750 ILCS 5/101 through 802 (West 1992)) in 1977, real proper­ty, even proper­ty titled in the name of one spouse, can be marital proper­ty which is awarded to the other spouse. 

First Midwest also disputes that actual notice gives rise to the doctrine of 
lis
 
pendens
.  It claims that the case of  
Allen & Korkowski & Associ­ates
 is limited to its facts and distin­guish­able from the present case.  First Midwest con­tends the holding in 
Allen & Korkowski & Associates
 is limited to the situation where a mortgage is taken after a judgment has already been entered in a pending divorce, and is now on appeal.  
Allen & Korkowski & Associates
, 108 Ill. App. 3d 384, 439 N.E.2d 102.  First Midwest notes that its mort­gage was taken well before the Coxes' divorce judg­ment.  First Midwest reasons that it could not have known a year in advance the property would eventu­ally be awarded to Patricia Cox.  

However, 
Allen & Korkowski & Associates
 does not indicate that its holding is limited to cases where the mortgage was taken after the divorce judgment.  It simply holds that subsequent parties with actual notice of 
pending
 proceedings affecting their rights to that property are bound by those proceedings to the same extent as if they had con­struc­tive notice under section 2-1901.  
Allen & Korkowski & Associ­ates
, 108 Ill. App. 3d at 391, 439 N.E.2d at 108.  As the court in 
Allen & Korkowski & Associ­ates
 noted, "[i]t is the existence of the suit itself, not the proba­bilities of success, which invokes the principle of 
lis
 
pendens
."  
Allen & Korkowski & Associates
, 108 Ill. App. 3d at 390, 439 N.E.2d at 107.

Another possible argument against the application of 
lis
 
pendens
 in divorces is that it is an unconstitutional re­straint on alienation of property, along the lines of 
Messen­ger v. Edgar
, 157 Ill. 2d 162, 177, 623 N.E.2d 310, 317 (1993).  In that case
, the supreme court struck down a 1993 amend­ment to section 501.1 of the Act, which provid­ed that upon the service of summons a "dissolution action stay" would automat­ical­ly be in effect restraining both parties from trans­ferring or encumbering any property without the consent of the other party or an order of the court.  750 ILCS 5/501.1 (West 1992).  The supreme court held that the statute was overbroad and not ratio­nal because it restrained the parties from the disposi­tion not only of marital assets but also nonmarital assets to which the other spouse could lay no claim.  
Messenger
, 157 Ill. 2d at 177, 623 N.E.2d at 317.  It could be argued the 
lis
 
pendens
 doctrine suffers from the same defect, but we reject that argu­ment.  
Lis
 
pendens
 does not prevent transfers or encumbrances of property during the pendency of a dissolution action, it serves only to bind one who obtains an interest in the property during the pendency of the dissolu­tion action as if he had been a party from the outset.  A disso­lution action cannot bind nonmarital proper­ty, which is property "to which the other spouse can lay no claim."  
Messen­ger
, 
157 Ill. 2d at 177, 623 N.E.2d at 317.

Finally, First Midwest contends that Patricia Cox is es­topped from contesting the mortgage given by her ex-husband because she could have contested it in the mar­riage dissolution action.  First Midwest cites 
Henkel
 (155 Ill. App. 3d 816, 508 N.E.2d 780).  In that case, a husband mortgaged his half of jointly owned property during the pendency of a divorce.  The court held the lender was not bound by 
lis
 
pendens
 because it had only knowledge of marital discord, not of a pending mar­riage disso­lution action.  
Henkel
, 155 Ill. App. 3d at 822, 508 N.E.2d at 784.  The court further noted in 
dicta
 that the wife knew about the lien at the time of the divorce proceed­ings and, there­fore, had accepted the property subject to the lien and could not contest it later.  
Henkel
, 155 Ill. App. 3d at 822-23, 508 N.E.2d at 784.  In the present case, First Midwest argues the trustee is similarly estopped because Patricia Cox knew of the mortgage at the divorce action and did not contest it.

Equitable estoppel applies when a person, by his statements or conduct, induces a second person to rely, to his detriment, on statements or conduct of the first person.  
In re Marriage of Webber
, 191 Ill. App. 3d 327, 331, 547 N.E.2d 749, 751 (1989).  Equitable estoppel does not apply in this case.  First Midwest could not have been induced to its detri­ment by Patricia's statements or conduct because it made the subject loans over a year before the fore­clo­sure and disso­lu­tion actions.  Patricia Cox's state­ments at the time of the mort­gage served as a warning to First Midwest not to rely on the mortgage.  Patri­cia Cox specif­ically told First Midwest that a divorce was pending and she would not sign the July 15 loan or increase her obliga­tions to the bank.  Nor does Patricia Cox's failure to contest the mort­gage during the mar­riage disso­lution action give rise to estop­pel.  At that point, First Midwest had already filed the foreclosure action and was litigat­ing the mort­gage, so its conduct could not have been affected by Patri­cia Cox's actions.     We believe the doctrine of 
lis
 
pendens
 applies.  In accordance with 
Allen & Korkowski & Associates
, First Midwest had actual notice of the Coxes' pending divorce and was not a 
bona
 
fide
 purchaser.  
Allen & Korkowski & Associates
, 108 Ill. App. 3d at 391, 439 N.E.2d at 108.  There­fore, it was bound to the judg­ment rendered in the under­ly­ing Cox dissolu­tion action as if it had been a party to that action.

However, we do not believe First Midwest's rights to the property were adversely affected by the judg­ment rendered in the dissolution action.  In 
Henkel
, the dissolution judgment awarded the property to Diana Jean "'free and clear of any inter­est of [Rob­ert] subject to any valid and legal liens against said property.'"  
Henkel
, 155 Ill. App. 3d at 818, 508 N.E.2d at 781.  Diana Jean then attempt­ed to show that the mortgage was not valid because it violated a temporary restrain­ing order enjoining Robert from disposing of or secreting or hiding the marital assets.  There was no such temporary restrain­ing order in this case, and defendant here makes a different argu­ment:  that because of the doctrine of 
lis
 
pendens
, First Midwest was in effect a party to the dissolu­tion of marriage litigation and took subject to any order eventually entered in that litiga­tion.

If the judgment of dissolution had awarded the Virden residence to James, the rights of First Midwest would not have been affected by the judgment.  If the judgment of disso­lu­tion had awarded the Virden residence to Patricia, subject to the lien of First Midwest, again First Midwest's rights would not have been affected.  The judgment of disso­lu­tion in fact provided that the "parties incurred certain debts," includ­ing a promissory note to First Midwest in the amount of $8,000, "se­cured by a second mortgage upon the home located at 18 Perry Drive, Virden, Illi­nois."  It also awarded the home at 18 Perry Drive, Virden, Illinois, to Patricia.  We read the judgment of dissolution as recognizing the mortgage and awarding the Virden residence subject to that mortgage.  By virtue of the doctrine of 
lis
 
pendens
, First Midwest took the mortgage subject to any order eventually entered in the dissolution of marriage action, but no order entered in that action interfered with the rights of First Midwest. 

We reverse and remand for the trial court to enter summary judgment in favor of First Midwest.

Reversed and remanded.

McCULLOUGH, P.J., and KNECHT, J., concur.